In re COASTAL PLAINS, INC., Debtor.

Industrial Clearinghouse, Inc., Coastal Plains, Inc., R. Wayne Duke, Dallas Valve and Instrument Company, and Intercontinental Bearing Company, Plaintiff,

v.

Jeffrey MIMS, Individually and as Trustee of Coastal Plains, Inc., Defendant.

Bankruptcy No. 86–31299–HDH–7.
Adversary No. 04–3669.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

March 11, 2005.

Donald R. Rector, Glast, Phillips and Murray, PC, Dallas, TX, for Plaintiff/Counter–Defendants.

Rod L. Poirot, Cavazos, Hendricks & Poirot, P.C., Dallas, TX, for Defendant/Counter–Plaintiff.

### MEMORANDUM OPINION

HARLIN D. HALE, Bankruptcy Judge.

Before the Court are various related matters, including: Plaintiffs' motions to Remand, to Strike the Notice of Removal, and for Partial Summary Judgment; and Defendant's motions for Judgment on the Pleadings, to Strike Plaintiffs' Notice Under 9027(e)(3), and Cross Motion for Summary Judgment.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. This matter is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(A).

In this adversary proceeding, the Plaintiffs sued the Trustee for intentional and negligent breach of fiduciary duty[1], as well as for a declaratory judgment that a claim against Debtor's former counsel had been abandoned. The declaratory judgment action has been dismissed.

### I. BACKGROUND FACTS

The underlying bankruptcy case has a very long and somewhat tortured history. *See, In re Coastal Plains,* 179 F.3d 197 (5th Cir.1999). The instant adversary proceeding ultimately emanates from this litigation. The pertinent facts largely outlined by the Fifth Circuit in its opinion, are described below for background.

Coastal Plains, Inc. ("Debtor" or "Coastal") filed a bankruptcy petition under Chapter 11 of Title 11 of the United States Code (11 U.S.C. § 101, et. seq., hereinafter referred to as the "Bankruptcy Code") in April of 1986. A week after filing its Chapter 11 petition, the Debtor initiated an adversary petition against Browning Manufacturing, seeking an order both enjoining it from disposing of inventory and directing its transfer to Coastal. Coastal also asserted a conversion claim; interference with contracts and/or business relationships because of Browning's failure to return inventory; punitive damages; and violation of the automatic stay.

Shortly after the adversary proceeding was filed, the bankruptcy court found that Browning had violated the automatic stay and ordered the inventory returned to Coastal; however, the other claims were not addressed. Browning completed the inventory-return before the end of May.

The bankruptcy schedules for Coastal, which Wayne Duke, Coastal's CEO, executed, did not disclose Costal's claims of up to $10 million against Browning. And, although Coastal's $1.3 million debt to Browning was listed in the schedule of liabilities, it was not specified as contingent, disputed, or subject to setoff.

In September of 1986, Westinghouse, Coastal's secured lender, asserted that it had a secured interest in excess of the value of the assets in Coastal's estate, and that Coastal had no hope to reorganize and moved the court to lift the § 362 automatic stay, so that it could foreclose on its collateral. Coastal entered into an agreement with Westinghouse and the stay was lifted for Westinghouse to foreclose. Westinghouse purchased Coastal's assets at an auction it later conducted for $3.25 million,

---

1. Although, as discussed, the Court is dismissing the case on other grounds, the proper standard would be to hold a trustee liable only for gross negligence. *See Dodson v. Huff (In re Smyth),* 207 F.3d 758, 761 (5th Cir. 2000).

and entered into a consignment agreement to sell the majority of the assets Westinghouse had purchased at the auction to Industrial Clearinghouse, Inc., which was formed by Coastal's CEO, Wayne Duke. Industrial Clearinghouse was headed by Mr. Duke, as CEO, and staffed by former employees of Coastal. Industrial Clearinghouse is one of the present Plaintiffs in this proceeding.

In February 1987, Industrial Clearinghouse purchased the remaining Coastal assets from Westinghouse for $1.24 million. Those assets expressly included the previously undisclosed "potential cause of action against Browning".

One year after the bankruptcy case was filed, in April of 1987, the case was converted to a case under Chapter 7 of the Bankruptcy Code, and Duke Salisbury was appointed Chapter 7 Trustee. Soon after becoming Chapter 7 Trustee, Mr. Salisbury filed a no-asset report and applied for closing the bankruptcy case. The case was closed in February 1988.

The case was reopened in March 1988 for reasons unrelated to the litigation with Browning. However, that April Industrial Clearinghouse urged the Trustee, Mr. Salisbury, to pursue the litigation against Browning. Salisbury refused, because the litigation would only have benefitted Industrial Clearinghouse.

In October 1988, Industrial Clearinghouse was substituted for Coastal in the long dormant (since May 1986) adversary proceeding against Browning. Industrial Clearinghouse filed its first amended complaint in March 1989, alleging that Browning's breach of the return-inventory agreements and return-delay caused Coastal's bankruptcy; and asserting claims for breach of contract, conversion, interference with contracts and/or business relationships, fraud, and violation of the automatic stay. A second amended complaint was filed in late 1989; a third, in early 1992. In September 1992, the Trustee again moved to close the bankruptcy case and for his discharge. Industrial Clearinghouse filed its fourth amended complaint that December.

The adversary proceeding was set for trial in May 1993 in the district court, which had withdrawn the reference from the bankruptcy court. But, on the eve of trial, the Trustee moved, to intervene, claiming that Coastal's bankruptcy estate owned the claims being pursued against Browning. The district court referred the case to the bankruptcy court for the ownership determination.

In bankruptcy court, Browning asserted, *inter alia*, that, based on Coastal's nondisclosure in its bankruptcy schedules and the lift-stay stipulation, Industrial Clearinghouse and the Trustee were equitably and judicially estopped. Regarding judicial estoppel, Industrial Clearinghouse responded that the claims had been omitted through Debtor's counsel's oversight. This Court (the Honorable Robert C. McGuire, C.J.) ruled that the estate owned the tort claims and Industrial Clearinghouse owned the contract claims.

Industrial Clearinghouse and the Trustee entered into an agreement to pursue the claims jointly and share any recovery against Browning, with Industrial Clearinghouse to receive 85 percent, and the estate to receive 15 percent. In May 1994, following a hearing that January, Judge McGuire approved the Trustee/Industrial Clearinghouse sharing agreement and, *inter alia*, rejected Browning's judicial estoppel argument. Browning appealed to the district court, which affirmed; and to the Fifth Circuit, which affirmed approval of the sharing agreement, but dismissed Browning's appeal as to judicial estoppel, holding that the ruling was interlocutory.

Duke Salisbury resigned as Chapter 7 Trustee in 1995 and was replaced with Mr. Mims, defendant herein, by the Office of the United States Trustee. Industrial Clearinghouse and Mr. Mims continued to pursue the litigation against Browning, and were successful in receiving a jury verdict for over $18 million that was later reduced by the U.S. District Court for the Northern District of Texas to a judgment of $4 million, and allowing Browning to set-off its $1.3 million claim.

However, in a rather strong opinion, the Fifth Circuit reversed on judicial estoppel grounds. *See In re Coastal Plains,* 179 F.3d 197 (5th Cir.1999). Thereafter, Mr. Wayne Duke (CEO for both Industrial Clearinghouse and Coastal), amended the Coastal bankruptcy schedules to include a claim against the original Debtor's counsel in this bankruptcy case, Jackson Walker, LLP, for failure to properly schedule the claims against Browning, the action which gave rise to the winning defense at the appeals court level.

After the Fifth Circuit ruled against the Trustee, Mr. Duke and counsel for Industrial Clearinghouse consulted with the Trustee in an attempt to persuade him to adjust his sights and sue Jackson Walker. After considering the proposal for some time, the Trustee declined.

Thereafter, in March of 2000, the Trustee filed his final report, application for compensation, and report of proposed distribution to creditors in this bankruptcy case, and sought and obtained orders allowing his fees and also allowing the case to be closed. The order approving Mims' application for fees and proposed distribution was entered by the Court on June 2, 2000, and the order discharging the trustee and closing this bankruptcy case was entered on December 12, 2000. The Plaintiffs, Industrial Clearinghouse, Mr. Wayne Duke (CEO of the Debtor and Industrial Clearinghouse), Coastal Plains, Inc. (an entity that claims to have merged with the bankrupt corporate shell of the Debtor), and two of the creditors in the Debtor's bankruptcy case, at all times were parties in interest to this bankruptcy case and had notice of all of the proceedings, including the orders allowing Mr. Mims' fees and allowing the case to be closed. Both orders became final without an objection being filed.

In May of 2003, the Plaintiffs filed a motion to reopen this case, which was granted by order entered on June 3, 2003. Thereafter, this Court considered the Plaintiffs' motion to appoint a trustee and abandon the Debtor's claim against Jackson Walker to them. This motion was denied and a subsequent motion for clarification was also denied, because any claim that the bankruptcy estate may have had against Jackson Walker, LLP for its alleged malpractice in not scheduling the Debtor's claims against Browning were specifically considered by the Trustee, valued at "zero" as listed on his final report, and thus fully administered in the bankruptcy case.

Subsequently, Plaintiff Industrial Clearinghouse sued Jackson Walker, LLP, the Debtor's old law firm, in state court. The outcome of the litigation against Jackson Walker is not clear, but this Court infers from the exhibits introduced by the parties that the state district court had ruled against Industrial Clearinghouse and for Jackson Walker in that action.

Apparently unsatisfied with the litigation against Jackson Walker, on November 10, 2004, almost four years after the Trustee had his fees allowed and the case closed by final order, Plaintiffs began the instant lawsuit against the Trustee. The Trustee obtained a reopening of the bankruptcy case and then removed the action to this Court.

## II. *ISSUES*

The issues before this Court are:

(1) whether removal directly to bankruptcy court rather than to the district court was proper;

(2) whether this Court has subject matter jurisdiction over a suit against a former Chapter 7 trustee by former creditors and parties in interest in the bankruptcy case;

(3) whether a lawsuit against a trustee is barred by the doctrine of *res judicata* after the trustee's fees have been allowed and the bankruptcy case closed by final order;

(4) whether a former Chapter 7 trustee may be sued without permission of the bankruptcy court in which the trustee served.

## III *ANALYSIS*

### A. REMOVAL

The Plaintiffs argue that the Trustee's removal of this proceeding from state court to the bankruptcy court was improper, and that the proceeding instead should have been removed to the district court. Plaintiffs state that the remedy for this error is to remand the case to state court, where any further attempt at removal will be untimely. The Trustee argues that removal to the bankruptcy court was proper.

 Some authority supports Plaintiffs' position. *See In re Schuler*, 45 B.R. 684, 686 (Bankr.D.N.D.1985) (finding that "No mention is made of the bankruptcy court" in section 1452). However, the majority of courts to look at this issue have found that removal to the bankruptcy court is proper. *Braden Partners, L.P. v. Hometech Medical Services, Inc.*, 2003 WL 223423 (N.D.Cal.2003) (citing *In re Aztec Industries, Inc.*, 84 B.R. 464 (Bankr.N.D.Ohio 1987)); *In re Princess Louise Corp.*, 77 B.R. 766, 768 (Bankr.C.D.Cal.1987); *In re*

*Convent Guardian Corp.*, 75 B.R. 346, 347 (Bankr.E.D.Pa.1987); *Matter of Centro de Transmisiones Automaticas*, 73 B.R. 297, 298 (Bankr.D.Puerto Rico 1987); *In re North American Funding Corp.*, 64 B.R. 795, 796 (Bankr.S.D.Tex.1986); *In re Finley*, 62 B.R. 361, 365 (Bankr.N.D.Ga.1986); *Matter of Cassidy Land & Cattle Co.*, 62 B.R. 93, 96 (Bankr.D.Neb.1986); *In re Commercial Oil Service, Inc.*, 58 B.R. 311, 314 (Bankr.N.D.Ohio 1986), aff'd sub nom. *In re Commercial Oil Service, Inc.*, 88 B.R. 126 (N.D.Ohio 1987); *In re Gianakas*, 56 B.R. 747, 750–753 (N.D.Ill.1985); *In re Philadelphia Gold Corp.*, 56 B.R. 87, 89–90 (Bankr.E.D.Pa.1985). This Court finds the majority view to be the correct one.

### *Procedure*

The procedure for removal of proceedings related to bankruptcy cases to federal court is outlined in § 1452(a) of Title 28. Section 1452(a) provides that "A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a).

The Plaintiffs argue that since § 1452(a) states that claims or causes of action may be removed to the "district court" and does not mention the "bankruptcy court", removal directly to the bankruptcy court is improper. As explained below, the Court finds this to be a distinction without a difference for purposes of removal of proceedings related to bankruptcy cases.

The Judicial Code provides for the designation of bankruptcy courts: "In each judicial district, the bankruptcy judges in

regular service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit or proceeding." 28 U.S.C. § 151(a). In each judicial district, the district court may then provide that all bankruptcy cases and related proceedings be referred to the bankruptcy judges for the district. 28 U.S.C. § 157(a). In this district, our district court has done just that. *See* Dist. Ct. Misc. Ord. No. 33. Thus, in this district, cases removed to the district court pursuant to § 1452(a), which are by definition "related proceedings", are automatically referred to its unit for bankruptcy matters, the bankruptcy court.

Use of the term "district court" to apply to both district courts and "bankruptcy courts" is not unique to § 1452. The same is true for the statute pertaining to jurisdiction over bankruptcy cases and proceedings. Section 1334, entitled "Bankruptcy Cases and Proceedings", vests original and exclusive jurisdiction over all bankruptcy cases in the federal "district court". 28 U.S.C. § 1334(a). The "district court" also has original, but not exclusive jurisdiction, of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11. 28 U.S.C. § 1334(b). These cases and proceedings are routinely filed in the "bankruptcy court" when all bankruptcy cases and related proceedings have been "referred" under § 157(a).

The "bankruptcy court" is simply the name given to the judges in that district who have been appointed by the circuit to hear bankruptcy matters. *See In re Gianakas*, 56 B.R. 747, 751 n. 7 (N.D.Ill.1985) (citing *In re Northwest Cinema Corp.*, 49 B.R. 479 (Bankr.D.Minn.1985)) ("[W]hile functionally there may appear to be a sep-

arate bankruptcy court, for jurisdiction purposes there is only one court, i.e., the district court.") The "bankruptcy court" obtains its jurisdiction as a unit of the district court and the order of reference. If the Plaintiffs' argument was to be taken to its logical conclusion, then all bankruptcy cases filed in this district would have to be filed with the clerk of the "district court", because that is the term used in the statute.

Similarly, Federal Rule of Bankruptcy Procedure 9027(a) provides that, "A notice of removal shall be filed with the clerk for the district and division within which is located that state or federal court where the civil action is pending." For purposes of this rule, "clerk" means the clerk of the bankruptcy court, if one has been appointed, otherwise it means the clerk of the district court. Fed. R. Bankr.P. 9001(3).

Finally, the Plaintiffs argued at the hearing before the Court that more recent cases have followed the minority position, making the trend to require removal to the district court. The Court finds this argument to be without merit. The cases cited by the Plaintiffs for this proposition, may contain some dicta supporting their position, but involved cases where a party tried to "remove" a case from federal district court to the bankruptcy court for that district. *See Sharp Electronics Corp. v. Deutsche Financial Services Corp.*, 222 B.R. 259 (Bankr.D.Md.1998); *Cornell & Company, Inc. v. Southeastern Pennsylvania Transportation Authority (In re Cornell & Company, Inc.)*, 203 B.R. 585 (Bankr.E.D.Pa.1997); *Centrust Savings Bank v. Love*, 131 B.R. 64, 65–66 (S.D.Tex. 1991). This Court agrees that the proper procedure in that instance is to request that the district court refer the proceeding to the bankruptcy court, because a case cannot be removed from a federal district court to its own bankruptcy court within

that district. However, the present case before the Court involves a removal from state court to bankruptcy court.

For the reasons cited above, the Court finds removal to the bankruptcy court to be proper.

## B. SUBJECT MATTER JURISDICTION

■ This Court has subject matter jurisdiction over the case because it is a core proceeding. Bankruptcy courts have the power to adjudicate "all core proceedings arising under title 11, or arising in a case under title 11." *In re Wood,* 825 F.2d 90, 95 (5th Cir.1987) (stating this was a reaction to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)). Core proceedings are those that arise from a substantive right under title 11 or can only occur in the context of a bankruptcy case. *Id.*

The Fifth Circuit has held that a debtor's malpractice suit against an accountant for the examiner was a core proceeding. *Southmark v. Coopers & Lybrand,* 163 F.3d 925 (5th Cir.1999). The court categorically rejected the argument that the malpractice claim could stand alone, that is, outside the bankruptcy court's core jurisdiction, because it must involve the services rendered to the debtor's estate. *Id.* at 931. There, the court also noted the importance of the bankruptcy "court's ability to police the fiduciaries, whether trustees or debtors-in-possession and other court-appointed professionals." *Id.*

■ The present case before the Court is analogous to *Southmark.* Here, the tort claim alleged against Mims as Chapter 7 Trustee of Coastal is inseparable from the bankruptcy context. To be sure, this action for breach of a fiduciary duty arises from the Trustee's administration of the bankruptcy case and necessarily involves his services to the Debtor's estate. Simply put, this claim could not arise were it not for the underlying bankruptcy case. Surely, if a malpractice claim against an examiner's accountant is a core proceeding, then an action against the Trustee is similarly a core proceeding under § 157. Therefore, the Court finds that actions against a trustee involving his conduct during the course of the bankruptcy case are core proceedings, and the Court has subject matter jurisdiction over them.

## C. DISMISSAL

### *Res Judicata*

■ The Trustee argues that this action is barred by the doctrine of *res judicata. Res judicata* bars claims that were either previously litigated or should have been raised in an earlier action. *Southmark,* 163 F.3d at 934. The test for determining whether *res judicata* applies is: "the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have [been] a final judgment on the merits and the same cause of action must be involved in both cases." *Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.),* 200 F.3d 382, 386 (5th Cir. 2000) (*quoting Nilsen v. City of Moss Point, Miss.,* 701 F.2d 556, 559 (5th Cir. 1983) (*en banc*)). The Fifth Circuit has adopted the transactional test of the "same nucleus of operative facts" to determine whether two suits involve the same cause of action under the fourth element. *Id.* (relying on *In re Howe,* 913 F.2d 1138, 1144 (5th Cir.1990)). The claim in the instant case is barred by *res judicata* because it involves the "same nucleus of operative facts" as the Trustee's fee application hearing.

### *Intelogic's Reasoning Controls*

The Fifth Circuit's decision in *Intelogic* is persuasive. *See Intelogic Trace, Inc.,*

200 F.3d at 386. In that case, a Chapter 7 trustee brought an action against accountants, Ernst & Young, and a management consultant for their alleged malpractice in providing bankruptcy services. The trustee argued that the transactional test was not met because the malpractice claim was based largely "upon what Ernst & Young did not do, rather than what it did do." Similarly, in this case, the Trustee is being sued for not pursuing alleged claims against Jackson Walker LLP. In *Intelogic*, the Fifth Circuit pointed to the language of the statute that governs fee awards and said that the determination of professional fees by the court represented a determination of " 'the nature, the extent, and the value of such services.' " *Intelogic Trace, Inc.*, 200 F.3d at 387 (*quoting* 11 U.S.C. § 330(a)(3)). Thus, the malpractice claim essentially required the court to consider the very services it had already considered in granting the fee application. *Id.* The court, therefore, found that there was a common nucleus of operative facts between the fee application hearing and the professional malpractice claim. *Id.* at 388. The present case is similar. The value and nature of the Trustee's services were already considered in the determination of his fee application before the case was closed.

■ *Res judicata* does not apply unless the claim could and should have been brought in the previous proceedings. *See Id.; In re Howe*, 913 F.2d at 1145. The *Intelogic* court considered whether the debtor knew of the facts giving rise to the malpractice claims before the fee hearing. *Intelogic Trace, Inc.*, 200 F.3d at 388. When the argument was made that the Board did not have an adequate opportunity to evaluate the quality of Ernst & Young's performance, the Fifth Circuit said that only a general awareness was required of the potential for malpractice claims against Ernst & Young for *res judicata* to apply. *Id.* at 388–89. In another case, the Fifth Circuit rejected an argument that *res judicata* should not apply, where the debtors argued that although the debtors knew of the underlying facts giving rise to the lender liability claims, they did not appreciate the significance of those facts. *In re Howe*, 913 F.2d at 1147.

In the instant case, the Plaintiffs had more than a general awareness of the potential for claims against the Trustee. Representatives of Industrial Clearinghouse met with the Trustee and communicated with his counsel regarding his joining with them in a suit against Jackson Walker. Mr. Duke was responsible for filing the amended schedules, which included the potential claim against Jackson Walker. All of the Plaintiffs received notice of the Trustee's application for fees and final report, and did not lodge an objection to either the Trustee's fees, or his application to close the bankruptcy case.

As a final matter, the Fifth Circuit in *Intelogic* considered whether the fee application hearing is an effective forum to raise malpractice issues. The court noted that the debtor need merely to inform the bankruptcy court of its concerns of malpractice, and the court could have stayed the fee hearing long enough for the debtor to pursue discovery. *Intelogic Trace, Inc.*, 200 F.3d at 389 (stating that pursuant to Bankruptcy Rule 9014 the court can at any time apply one or more of the rules in Part VII which would let the court apply the Federal Rules of Civil Procedure to discovery in an adversary proceeding). The Fifth Circuit concluded that the fee hearing provided an effective forum to raise malpractice claims. *Id.* (referring to *In re Baudoin*, 981 F.2d 736, 744 (5th Cir.1993); and *Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 869 (5th Cir. 1984)).

Here, the Plaintiffs could have and should have raised their claims against the Trustee in the fee application hearing. Accordingly, the Plaintiffs in this case are barred by *res judicata* from their claims against the Trustee.

## D. *Barton Doctrine*

Because the doctrine of *res judicata* precludes the Plaintiff's claims, the Court need not reach the other defenses of the Trustee. However, history dictates that the decisions by the bankruptcy court in this case are usually only the first stop on their way to the district court and Fifth Circuit Court of Appeals. Therefore, the Court will discuss a second argument of the Trustee which has merit, the "Barton Doctrine," which also compels dismissal and precludes remand.

The Barton Doctrine is derived from a Supreme Court decision which held that leave of the appointing court is required to sue a railroad receiver in their official capacity. *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881). Following that decision, this holding was expanded to include claims against bankruptcy trustees. *Lebovits v. Scheffel (In re Lehal Realty Assoc.)*, 101 F.3d 272, 276 (2d Cir.1996).

A trustee in bankruptcy is an officer of the court that appoints him. *See Lehal Realty Assoc.*, 101 F.3d at 276 (a bankruptcy trustee is an officer of the court that appoints him or her); *see also River Production Co. v. Webb (In re Topco, Inc.)*, 894 F.2d 727, 739 n. 16 (5th Cir.1990) ("When persons, such as trustees, perform duties in the administration of bankrupt estates, they act as officers of the court."). The appointing court has a strong interest in protecting the trustee from unjustified personal liability for acts taken within the scope of his official duties. *Lehal Realty Assoc.*, 101 F.3d at 276.

A number of circuit courts have adopted the Barton Doctrine, requiring a party to

obtain leave of the bankruptcy court before pursuing an action against the trustee. *See Id.; Carter v. Rodgers*, 220 F.3d 1249 (11th Cir.2000); *Muratore v. Darr*, 375 F.3d 140 (1st Cir.2004); *In re Linton*, 136 F.3d 544 (7th Cir.1998). In addition to these circuits, at least one court in the Fifth Circuit has discussed Barton Doctrine. *See In re Carter Paper Co., Inc.*, 220 B.R. 276 (Bankr.M.D.La.1998). In *Carter Paper Co., Inc.*, the trustee was being sued for not abandoning property of the estate fast enough. *Id.* at 311. The court cited several cases for the proposition that an action against a bankruptcy trustee for conduct in administering the estate must be brought in the bankruptcy court that appointed the trustee. *See Id.* (citing *Chappel v. First Trust Co. of Appleton, Wisconsin*, 30 F.Supp. 765 (E.D.Wis. 1940)); *In re Markos Gurnee Partnership*, 182 B.R. 211 (Bankr.N.D.Ill.1995).

■ These cases are persuasive. Because of the Barton Doctrine, the instant case should not have been filed in state court without first seeking this Court's permission. The Barton Doctrine requires dismissal of the instant action against the Trustee. Pursuant to the Barton Doctrine, this Court has exclusive jurisdiction over this action, and thus abstention and remand would be inappropriate, even if the case were not dismissed.

## IV. *CONCLUSION*

In conclusion, the Court finds that: (1) removal directly from state court to the bankruptcy court was proper; (2) this is a core proceeding, and thus, the Court has subject matter jurisdiction over this suit against the former trustee for this bankruptcy estate involving actions that he took under his official capacity as trustee; (3) that the Plaintiffs' claims against Mr. Mims are barred by the doctrine of *res judicata;* and (4) the Barton Doctrine applies to trustees in bankruptcy and the

Plaintiffs were required to seek this Court's permission before filing suit.

Separate orders and a judgment will be entered consistent with this memorandum opinion.

### ORDER ON PLAINTIFFS' MOTION TO REMAND

Came before the Court for consideration on January 18, 2005, Plaintiffs' Motion to Remand. For the reasons stated in the Court's Memorandum Opinion, the Court finds that the motion should be denied. It is therefore

**ORDERED** that the Plaintiffs' Motion to Remand is **DENIED**.

### ORDER ON PLAINTIFFS' MOTION TO STRIKE

Came before the Court for consideration on January 18, 2005, Plaintiffs' Motion to Strike Notice of Removal. For the reasons stated in the Court's Memorandum Opinion, the Court finds that the motion should be denied. It is therefore

**ORDERED** that the Plaintiffs' Motion to Strike Notice of Removal is **DENIED**.

### ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Came before the Court for consideration on January 18, 2005, Plaintiffs' Motion for Partial Summary Judgment. For the reasons stated in the Court's Memorandum Opinion, the Court finds that the motion should be denied. It is therefore

**ORDERED** that the Plaintiffs' Motion for Partial Summary Judgment is **DENIED**.

### ORDER ON MOTION TO STRIKE

Came before the Court for consideration on January 18, 2005, Trustee's Motion to Strike Plaintiffs' Notice Under 9027(e)(3). For the reasons stated in the Court's Memorandum Opinion, the Court finds

that this motion should be granted. It is therefore

**ORDERED** that the motion is **GRANTED** and the Plaintiffs' Notice is hereby Stricken.

### JUDGMENT

Came before the Court for consideration on January 18, 2005, Trustee's Motion to Dismiss case and Trustee's Cross–Motion for Summary Judgment. For the reasons stated in the Court's Memorandum Opinion, judgment will be entered in favor of the Trustee on all claims, except that the trustees counter-claim for attorney's fees and costs will be denied. It is therefore

**ORDERED** that Judgment is entered in favor of the Trustee; and it is further

**ORDERED** that the Trustee's counter-claim for attorney's fees and costs is **DENIED**; and it is further

**ORDERED** that this proceeding is hereby **DISMISSED**.