**In the MATTER OF Betty A. LINTON, also known as Betty A. Lasiter, Debtor.**

**APPEAL OF Betty A. LASITER and Richard L. Scharpf.**

No. 97–2214.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1998.

Decided Feb. 18, 1998.

Rehearing Denied March 17, 1998.

Carolyn A. Hallanger (argued), Plymouth, MI, for Appellant.

John B. Drummy (argued), Peter A. Velde, Kightlinger & Gray, Indianapolis, IN, for Appellee.

Betty A. Linton, Greenwood, IN, for Debtor.

Before POSNER, Chief Judge, and EASTERBROOK and EVANS, Circuit Judges.

POSNER, Chief Judge.

We are asked to decide in what circumstances a trustee in bankruptcy may be sued in state court for actions that he undertook in his role as trustee. Betty Lasiter filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code in the bankruptcy court in Indianapolis in 1993, and the court appointed Paul Gresk as trustee. Shortly after his appointment he filed an adversary action against Lasiter, her sons, and Richard Scharpf, claiming that a chain of transactions in which Lasiter had in 1989 sold her home to a trust for the sons and leased it back from the trust to live in, and

had three years later married Scharpf who shortly afterward bought the home from the trust, constituted a fraudulent conveyance. The trustee hoped by the adversary action to recover the house for the debtor's estate. In 1994, however, he dropped the action. The bankruptcy proceeding was closed in June of the following year.

Eleven months later, Lasiter and Scharpf moved the bankruptcy court for leave to file a suit for malicious prosecution against Gresk in an Indiana state court, contending that Gresk had known from the outset that the adversary proceeding had no merit. Lasiter and Scharpf had already filed the suit, without waiting for leave to do so from the bankruptcy court; it has lain dormant pending final action on the motion for leave. The bankruptcy court denied the motion, the district court affirmed, and Lasiter and Scharpf appeal to us, arguing that leave to file is not required when the bankruptcy proceeding has ended, because then creditors can't be affected by the suit, but that if leave is required the bankruptcy court should have granted it.

The Bankruptcy Code nowhere states that someone wanting to sue a trustee in bankruptcy concerning actions taken by him in the course of his trusteeship must obtain the permission of the bankruptcy court. The requirement is assumed, however, in a provision of the Judicial Code, 28 U.S.C. § 959(a); see *Thompson v. Texas Mexican Ry.*, 328 U.S. 134, 138, 66 S.Ct. 937, 941, 90 L.Ed. 1132 (1946); *In re Lehal Realty Associates*, 101 F.3d 272, 276 (2d Cir. 1996); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240–41 (6th Cir.1993); *Austrian v. Williams*, 216 F.2d 278, 285 (2d Cir.1954), waiving the requirement in circumstances not applicable to this case. *Vass v. Conron Bros. Co.*, 59 F.2d 969 (2d Cir.1932) (L.Hand, J.). An unbroken line of cases, including Judge Hand's Vass decision, has imposed the requirement as a matter of federal common law. E.g., *McNulta v. Lochridge*, 141 U.S. 327, 330, 12 S.Ct. 11, 12, 35 L.Ed. 796 (1891) (railroad receivership); *In re Lehal Realty Associates, supra*, 101 F.3d at 276; *In re DeLorean Motor Co., supra*, 991 F.2d at 1240; *In re Beck Industries, Inc.*, 725 F.2d

880, 886–87 (2d Cir.1984) (Friendly, J.). When the interpretation of federal statutes fails to yield specific answers to procedural issues, federal courts have implicit authority to supply the answers. The trustee in bankruptcy is a statutory successor to the equity receiver, and it had long been established that a receiver could not be sued without leave of the court that appointed him. *Barton v. Barbour*, 104 U.S. 126, 128–29, 26 L.Ed. 672 (1881); *Chicago Title & Trust Co. v. Fox Theatres Corp.*, 69 F.2d 60, 62 (2d Cir.1934). *McNulta*, a railroad bankruptcy case, involved an equity receivership rather than a bankruptcy trustee, and there is no relevant difference between the two types of officer. Just like an equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code. If he is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded.

This concern is most acute when suit is brought against the trustee while the bankruptcy proceeding is still going on. The threat of his being distracted or intimidated is then very great, and some of the cases we have cited stress this. In this case, the suit and the motion for leave to file it came after the bankruptcy had been wound up. We cannot find any federal appellate court rulings on whether leave is required in such a case. But we think that it is. Without the requirement, trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive (and the expense of bankruptcy is already a source of considerable concern). Furthermore, requiring that leave to sue be sought enables bankruptcy judges to monitor the work of the trustees more effectively. It does this by compelling suits growing out of that work to be as it were prefiled before the bankruptcy judge that made the appointment; this helps the judge decide whether to approve this trustee in a subsequent case.

Yet these reasons alone might not be sufficient to warrant the extension (if that is how it should be regarded) of the leave-to-file requirement to suits filed after the winding up of the bankruptcy. For we are mindful of the Supreme Court's refusal in *Ferri v. Ackerman*, 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979), to grant appointed counsel in federal criminal cases immunity from malpractice suits by their clients, in the face of arguments similar to those in the preceding paragraph. See *id.* at 204–05, 100 S.Ct. at 409–10. At stake in the present case, however, is a concern that has no counterpart in *Ferri*, concern with the integrity of the bankruptcy jurisdiction. If debtors, creditors, defendants in adversary proceedings, and other parties to a bankruptcy proceeding could sue the trustee in state court for damages arising out of the conduct of the proceeding, that court would have the practical power to turn bankruptcy losers into bankruptcy winners, and vice versa. A creditor who had gotten nothing in the bankruptcy proceeding might sue the trustee for negligence in failing to maximize the assets available to creditors, or to the particular creditor. A debtor who had failed to obtain a discharge might through a suit against the trustee obtain the funds necessary to pay the debt that had not been discharged.

Of course principles of res judicata and the good faith of state courts would head off the worst consequences of the kind of divided jurisdiction over bankruptcy matters that we have just described. But a simpler and more secure protection is to require the person wanting to bring a suit in state court against a trustee in bankruptcy to obtain leave to do so from the bankruptcy court. We can draw an analogy between federal officers and bankruptcy trustees, and hence between the federal officers' removal statute, 28 U.S.C. § 1442; see *Arizona v. Manypenny*, 451 U.S. 232, 241–42, 101 S.Ct. 1657, 1664, 68 L.Ed.2d 58 (1981), and the judge-made doctrine requiring leave of the bankruptcy court to sue the trustee. The latter has actually a more secure constitutional pedigree, because it responds to the concern that motivated the framers of the Constitution in authorizing Congress to enact uniform, nationwide bankruptcy laws, Art. I, § 8, cl. 4—concern that

states might favor debtors, or creditors, unduly. Joseph Story, Commentaries on the Constitution of the United States § 540, pp. 386–87 (1833).

We need not consider what remedies the trustee might have if, as indeed happened in this case, the suit is brought in state court without the plaintiff's seeking the leave of the bankruptcy court, or after that leave is denied. Of course the trustee could move the state court to dismiss the suit, or to stay it until the necessary leave was obtained; and such a motion presumably would be granted. A more interesting question is whether he could obtain an injunction from the bankruptcy court directing the plaintiff in the state court action to dismiss the suit. A bankruptcy proceeding can be reopened for cause, 11 U.S.C. § 350(b), by "the debtor or other party in interest." Bankr. R. 5010. The term "party in interest" is not defined, but is generally held to include the trustee. *In re Winebrenner*, 170 B.R. 878, 881 (Bankr. E.D.Va.1994); *White v. Boston*, 104 B.R. 951, 953–55 (S.D.Ind.1989); contra, *In re Ayoub*, 72 B.R. 808, 812 (Bankr.M.D.Fla.1987). The argument for including him is particularly strong when he is seeking to enforce a requirement of bankruptcy law intended for his protection and for the protection of the integrity of the bankruptcy system. The Anti–Injunction Act, containing as it does an exception for injunctions necessary to "protect or effectuate [the issuing court's] judgments," 28 U.S.C. § 2283, would presumably not stand in the way. But we need not resolve that issue or consider what remedies a person genuinely aggrieved by a trustee's misconduct might have in federal as well as state court. Although at argument the plaintiffs' lawyer said that if we refused to reverse the district court she would like to proceed in the bankruptcy court against the trustee, the request appears nowhere in her brief and we therefore treat it as waived.

▮ The remaining question is whether the bankruptcy judge abused his discretion (which is the standard governing our review of such a ruling, *In re Beck Industries, Inc.*, *supra*, 725 F.2d at 889) in refusing to allow the plaintiffs to sue in state court. They appear to believe that the fact that the trust-

ee dropped the adversary action shows that it was groundless and therefore malicious. This of course is wrong. Many suits filed in good faith after careful precomplaint investigation fizzle long before judgment, whether because further investigation fails to substantiate the allegations of the complaint or because the defendant presents compelling evidence in his favor that the plaintiff didn't know about or because it turns out that the defendant doesn't have sufficient assets to make the continued prosecution of the suit worthwhile. As long as there is probable cause to sue, there is no malicious prosecution. *Lazarus Department Store v. Sutherlin,* 544 N.E.2d 513, 524 (Ind.App.1989); *Garrett v. City of Bloomington,* 478 N.E.2d 89, 93 (Ind.App.1985); *Gomez v. Adams,* 462 N.E.2d 212, 222 (Ind.App.1984).

The bankruptcy judge was satisfied that there was probable cause here. It is true that the original transaction, in which Lasiter sold her home to a trust of which her son was the trustee and leased it back from the trust to live in, occurred four years before she declared bankruptcy and we may assume was motivated by the tax reasons that she gave for the transaction. But the reason for the trust's sale of the house to her husband is not illuminated by the record, and looking at the series of transactions as a whole the trustee could reasonably suspect that the beneficial ownership of the home had either remained with Lasiter all the time or had been revested in her by the sale nominally to her husband. Such a chain of transfers was bound to cause a light bulb to flash in a receiver's or bankruptcy trustee's brain. The trustee might well have been thought derelict not to pursue the claim of fraudulent conveyance to the extent that he did. The fact that he couldn't substantiate his suspicions did not retroactively remove his probable cause to sue. In these circumstances, the suit by Lasiter and her husband for malicious prosecution was doomed and leave to file the suit in state court was rightly denied.

AFFIRMED.