In re WRT ENERGY CORP., Debtor.

No. 96–50212.

United States Bankruptcy Court,
W.D. Louisiana.

Sept. 28, 2007.

718

 

Milling, Benson, Woodward, Paul N. Debaillon, Lafayette, LA, Gerald F. Slattery, Jr., Energy Centre, David R. Dyer, Paul J. Goodwine, New Orleans, LA, Lisa Dianne Hollbrook, Oklahoma City, OK, Mark S. Farha, Dallas, TX, Michael L. Schein, Schulte, Roth & Zabel LLP, Jeffrey S. Sabin, New York, NY, Mitchell A. Seider, Houston, TX, for Debtor.

Frances H. Strange, Shreveport, LA, for U.S. Trustee.

Daniel H. Golden, New York, NY, Douglas S. Draper, New Orleans, LA, Robin Ronquillo De Leo, Mandeville, LA, for Creditor Committee.

## REASONS FOR DECISION

ROBERT SUMMERHAYS, Bankruptcy Judge.

The present matter before the court is a Motion Seeking Permission to Prosecute Civil Litigation Against Goldin Associates, LLC in the United States District Court for the Western District of Louisiana (the "Motion for Leave") filed by Central Boat Rentals, Inc. ("Central"). Goldin Associates, LLC ("Goldin") is the trustee of a litigation trust created by a confirmed plan of reorganization under Chapter 11 of the Code. Central is a beneficiary of the trust, and has previously filed a purported class action against Goldin on behalf of itself and all other trust beneficiaries in the United States District Court for the Western District of Louisiana (the "District Court Action"). Goldin has filed a motion to dismiss in the district court, arguing that, as a trustee, it is subject to the protections of the "*Barton* doctrine." Goldin contends that the *Barton* doctrine required Central to obtain leave from this court prior to commencing its suit against Goldin. Central contends that the *Barton* doctrine does not apply to Goldin and, in the alternative, that this court lacks post-

confirmation jurisdiction over the claims asserted against Goldin.

Following a hearing on Central's motion, the court took the matter under advisement. After considering the parties' submissions, the arguments of counsel, and the relevant authorities, the court grants Central's Motion for Leave. While the court concludes that the *Barton* doctrine does apply to a liquidating trustee such as Goldin, the *Barton* doctrine does not bar the District Court Action because this court lacks post-confirmation jurisdiction over Central's suit against Goldin.

## JURISDICTION

This case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference. The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). These Reasons for Decision constitute the court's findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure.

## BACKGROUND

WRT Energy Corporation ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 14, 1996. Prior to confirmation, the United States Trustee appointed an examiner to investigate potential claims against the Debtor's former management. The report of the examiner identified potential causes of action that could be pursued on behalf of the creditors of the estate, and recommended the creation of a separate entity to pursue this litigation. On May 2, 1997, the court confirmed a plan of reorganization ("Plan") that was jointly prepared by the Debtor, DLB Oil & Gas Company, Inc., ("DLB") and Wexford Management, LLC ("Wexford").

Sections 33.15 and 33.16 of the Plan provide for the creation of a "Litigation Entity" as a representative of the Debtor's estate for the purposes of pursuing the potential causes of action identified by the examiner. With the exception of a limited carve-out, the Plan assigned "any and all causes of action, claims, rights of action, suits or proceedings, whether in law or equity, whether known or unknown, which could have been or could be asserted, by the Debtor, including without limitation, causes of action under Sections 542, 543, 544, 545, 546, 547, 548, 549, 550, or 553(b) of the Bankruptcy Code." Plan at §§ 33.15, 1.33. The Plan and the Confirmation Order provided for the execution of a "Litigation Agreement" in substantially the same form as the unexecuted agreement introduced as an exhibit during the confirmation hearing. The exhibit introduced during the hearing was titled the Liquidating Trust Agreement (the "Trust Agreement"). Although the Confirmation Order did not appoint or name a trustee, the Trust Agreement names Goldin as the trustee of the WRT Creditors Trust (the "Litigation Trust" or "Trust").[1] The Trust Agreement was executed two months after plan confirmation—July 10, 1997. Finally, the Confirmation Order provides for continuing jurisdiction over certain matters pertaining to the Trust:

> *"The Bankruptcy Court shall retain original but not exclusive jurisdiction over all rights and causes of action assigned to the Litigation Entity* including, without limitation, the determination of all controversies and disputes

---

1. The Trust is the "Litigation Entity" referenced in the Plan and the Confirmation Order.

arising under and in connection with the causes of action or the Litigation Agreement."

Confirmation Order at 21.

After the Trust Agreement was executed, Goldin investigated potential claims, and brought multiple suits against various parties. Goldin reached settlements in many of these matters, and obtained court approval of the settlements. According to Goldin, the most expensive of the matters involved claims against LLOG Exploration Company. Under the terms of the Trust Agreement, the Trust was to expire on July 10, 2000, unless the trustee requested court approval to extend the term of the trust. Goldin did not seek leave to extend the trust by July 10, 2000, and, after extensive litigation, the court ruled that the trust terminated on July 10, 2000. Goldin subsequently reported that the trust collected over $17 million through its activities. Central, however, alleges that these proceeds were offset by $17,726,128.00 in fees and expenses, thus providing a net return of $19,000 to the beneficiaries of the trust. Although the Trust had not made any distributions to creditors when the District Court Action was commenced, the Trust's sole function in the implementation of the Plan—the prosecution of the causes of action assigned by the Plan—ceased when the Trust terminated.[2]

On August 8, 2006, Baker Hughes Oilfield Services, Inc., a beneficiary of the trust, filed a complaint in the United States District Court for the Western District of Texas alleging multiple causes of action against Goldin, including claims for a breach of contract, breach of fiduciary duties, and gross negligence. The complaint does not include any claims arising under the Bankruptcy Code. Baker Hughes subsequently withdrew as class

representative and Central was substituted as class representative.

## DISCUSSION

### 1. The *Barton* Doctrine

■ The *Barton* doctrine provides that a court appointed trustee cannot be sued for actions taken in the trustee's official capacity unless leave is first obtained from the court that appointed the trustee. *See Muratore v. Darr,* 375 F.3d 140, 147 (1st Cir.2004); *Carter v. Rodgers,* 220 F.3d 1249, 1252 (11th Cir.2000); *In re Linton,* 136 F.3d 544, 546 (7th Cir.1998); *In re Crown Vantage, Inc.,* 421 F.3d 963 (9th Cir.2005). The doctrine takes its name from the 1881 Supreme Court Case of *Barton v. Barbour,* 104 U.S. 126, 26 L.Ed. 672 (1881). In *Barton,* the Supreme Court held that a party must first obtain leave of the appointing court before suing a railroad receiver in his official capacity. *Barton,* 104 U.S. at 126, 14 Otto 126. The Court based its holding on the appointing court's exclusive *in rem* jurisdiction over the property administered by the receiver. 104 U.S. at 126, 14 Otto 126. Given the appointing court's exclusive jurisdiction, the "non-appointing" court lacked jurisdiction over the suit against the receiver. Although the doctrine was conceived in the context of railroad receivers, courts have broadly applied the *Barton* doctrine to bankruptcy trustees. The extension of the doctrine to the bankruptcy arena reflects the fact that a "trustee in bankruptcy is a statutory successor to the equity receiver" and "like an equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the Court's control by virtue of the Bankruptcy Code." *Linton,* 136 F.3d at 545.

---

**2.** Section 4.03 of the Trust Agreement provides: "After termination of the Trust and solely for purposes of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its duties have been fully performed."

With respect to bankruptcy trustees, courts have articulated the underlying policies and rationale for the *Barton* doctrine in different ways. Many courts focus on the bankruptcy court's exclusive *in rem* jurisdiction over the estate. *See, e.g., Crown Vantage,* 421 F.3d at 971. Other courts have focused on a trustee's quasi-judicial immunity derived from the appointing court. *See, e.g., In re Solar Financial Services, Inc.,* 255 B.R. 801 (Bankr.S.D.Fla.2000). Courts have also focused on the oversight and supervisory responsibilities of bankruptcy courts. *See, e.g., In re Lomenbraum,* 453 F.3d 314, 321–322 (6th Cir.2006) (purpose of the *Barton* doctrine is to enable "the Bankruptcy Court to maintain better control over the administration of the estate"); *Crown Vantage,* 421 F.3d at 974 ("[R]equiring that leave to sue be sought enables bankruptcy judges to monitor the work of trustees more effectively.") The common thread running through these policy explanations is the bankruptcy court's jurisdiction over the bankruptcy case and the powers that flow from that jurisdiction.

## 2. Applicability of the *Barton* Doctrine to Goldin

Central first challenges the applicability of the *Barton* doctrine to Goldin. According to Central, the Fifth Circuit has not expressly adopted the *Barton* doctrine in the bankruptcy context. Central also questions the applicability of the doctrine to liquidating trusts created in a plan of reorganization, as opposed to trustees expressly appointed under the Code. Finally, Central argues that Goldin was never expressly appointed by the court and cannot, therefore, rely on the protection of the doctrine. As explained below, none of these arguments overcome the applicability of the *Barton* doctrine in this case.

■ Although the Fifth Circuit has never expressly applied *Barton* to bankruptcy trustees, lower courts in this circuit have recognized and applied the doctrine to bankruptcy trustees. *See In re Coastal Plains, Inc.,* 326 B.R. 102 (Bankr.N.D.Tex. 2005); *Telpro, Inc. v. Litzler,* No. 3:01–CV–0220, 2002 WL 31553971 at *4 n. 3 (N.D.Tex. Nov. 15, 2002) ("[A] party seeking to bring an action against the trustee for acts within the trustee's authority as an officer of the court has long been required to seek leave of the appointing court.") (citing *Barton* ). Moreover, the doctrine has been widely approved in other circuits. *See Muratore,* 375 F.3d at 147 (1st Cir. 2004); *Gordon v. Nick,* 162 F.3d 1155 (4th Cir.1998); *Lowenbraun,* 453 F.3d 314 (6th Cir.2006); *Linton,* 136 F.3d at 546 (7th Cir.1998); *Crown Vantage, Inc.,* 421 F.3d 963 (9th Cir.2005); *Carter,* 220 F.3d at 1252 (11th Cir.2000). Accordingly, the court recognizes the viability of the *Barton* doctrine and its applicability to bankruptcy trustees despite the lack of any Fifth Circuit decisions adopting the doctrine.

■ The court also concludes that the *Barton* doctrine applies to a liquidating trustee like Goldin. As Central correctly points out, most of the cases that address the Barton doctrine involve Chapter 13 and Chapter 7 trustees. However, the Ninth Circuit recently addressed the applicability of the *Barton* doctrine to liquidating trustees, and concluded that the doctrine applies equally to liquidating trustees. In *Crown Vantage,* the confirmed plan provided for the creation of a liquidating trust and named a liquidating trustee. The plan authorized the liquidating trustee to commence litigation against, *inter alia,* the debtor's former corporate owner and former officers and directors. The debtor's former owner subsequently filed a lawsuit in Delaware state court seeking to compel the trustee to dismiss California state court actions that he had brought against the debtor's former own-

er. The Ninth Circuit held that the rationale for the *Barton* doctrine applies equally to a liquidating trustee:

> Further, the fact that the officer involved is not a bankruptcy trustee, but rather a liquidating trustee, is of no moment. As the Sixth Circuit has observed, under the Barton doctrine, 'court appointed officers who represent the estate are the functional equivalent of a trustee....' *DeLorean*, 991 F.2d at 1241. Here, as part of a liquidating Chapter 11 reorganization proceeding, the bankruptcy court chose the mechanism of a liquidating trust to liquidate and distribute the assets of the estate. The bankruptcy court retained jurisdiction over the case. In this context, the Liquidating Trustee is the 'functional equivalent' of the bankruptcy trustee and is entitled to Barton protection. *Id.* Thus, the fact that the bankruptcy assets are now being liquidated through the vehicle of a liquidating trust with an appointed liquidating trustee does not prevent the application of the Barton doctrine.

421 F.3d at 973. The court finds the Ninth Circuit's reasoning in *Crown Vantage* persuasive, and concludes that, as a general matter, the *Barton* doctrine applies to liquidating trustees appointed pursuant to a confirmed plan of reorganization. However, as explained below, the scope of the doctrine in the case of a liquidating trust may be limited by the extent of the court's post-confirmation jurisdiction.

■ Finally, the manner of Goldin's appointment as trustee does not remove Goldin from the protection of the *Barton* doctrine. The plan confirmed by the court specifically provided for the creation of the Litigation Trust. The order of confirmation approved the agreement governing the Litigation Trust, and that agreement designates Goldin as the trustee. The con-firmation order also states that the Litigation Trust is a representative of the estate for purposes of pursuing the causes of action assigned to the trust. In short, Goldin was the "functional equivalent" of a bankruptcy trustee for purposes of applying *Barton.*

### 3. The *Barton* Doctrine and Post-confirmation Jurisdiction

■ The question of post-confirmation jurisdiction provides more of a stumbling block for the application of the *Barton* doctrine to this case. As explained above, the policies underlying *Barton* are grounded in the bankruptcy court's jurisdiction over the case. Accordingly, the reach of the *Barton* doctrine is necessarily limited by the extent of the bankruptcy court's jurisdiction. In the present case, Central contends that this court's limited post-confirmation jurisdiction does not extend to its state-law claims against Goldin.

### a. The Scope of Post-confirmation Jurisdiction

■ The starting point for determining the scope of a bankruptcy court's post-confirmation jurisdiction is 28 U.S.C. § 1334(b). *Veldekens v. GE HFS Holdings, Inc. (In re Doctors Hosp.1997, L.P.)*, 351 B.R. 813, 835 (Bankr.S.D.Tex.2006) (citing *U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.)*, 301 F.3d 296, 303–304 (5th Cir.2002); *Coho Oil & Gas, Inc. v. Finley Resources, Inc. (In re Coho Energy, Inc.)*, 309 B.R. 217, 220 (Bankr.N.D.Tex.2004)). Section 1334(b) provides jurisdiction over all civil proceedings "arising under," "arising in," or "related to" a case under Title 11. The scope of a bankruptcy court's "related to" jurisdiction turns on whether the court has confirmed a plan. Prior to the confirmation of a Chapter 11 plan, the court's "related to" jurisdiction is expansive, and ex-

ists where "the outcome of the proceeding could conceivably have an effect on the debtor's estate." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir.1987) (emphasis added).

■ In contrast, a bankruptcy court's "related to" jurisdiction is considerably more limited once the court confirms a plan under Chapter 11. *See U.S. Brass Corp. v. Travelers Ins. Group (In re U.S. Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002); *Bank of Louisiana v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388 (5th Cir.2001). As the Fifth Circuit explained in *Craig's Stores*, "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or the execution of the plan." Once the estate ceases to exist post-confirmation, the focus thus shifts from whether the matter before the court "could conceivably have an effect on the debtor's estate," to whether the matter bears a close nexus to the confirmed plan. Accordingly, bankruptcy courts have identified the following nonexclusive factors in determining whether post-confirmation jurisdiction exists under *Craig's Stores* and *U.S. Brass:*

> (1) whether the claim or dispute arose before or after confirmation;
> (2) what provisions in the confirmed plan exist for resolving disputes and whether there are provisions in the plan retaining jurisdiction for trying these suits;
> (3) whether the plan has been substantially consummated;
> (4) the parties involved in the dispute;
> (5) whether state law or bankruptcy law applies;

> (6) whether the claims require the interpretation of the plan or the court's orders; and

> (7) evidence of forum shopping.

*In re Encompass Services Corp.*, 337 B.R. 864, 873 (Bankr.S.D.Tex.2006); *In re Avado Brands, Inc.*, 358 B.R. 868, 878 (Bankr. N.D.Tex.2006).

### b. Post-confirmation Jurisdiction over Liquidating Trusts

This jurisdictional determination poses a unique challenge for courts when the matter involves a liquidating trust established pursuant to a confirmed plan.[3] These trusts "by their nature maintain a connection to the bankruptcy even after the plan has been confirmed" because they often play a central role in the implementation of the plan. *In re Resorts International*, 372 F.3d at 167. Given this nexus between the trust and the plan, courts have shown a willingness to exercise post-confirmation "related to" jurisdiction over cases involving trusts that are successors to the interests of liquidating or reorganized debtors. *See, e.g., Avado Brands, Inc.*, 358 B.R. at 878; *In re AstroPower Liquidating Trust*, 335 B.R. 309 (Bankr.Del.2005); *Michaels v. World Color Press, Inc. (In re LGI, Inc.)*, 322 B.R. 95, 108 (Bankr.D.N.J.2005). On the other hand, courts have also held that a bankruptcy court does not have unending post-confirmation jurisdiction over a liquidating trust. *In re Resorts Int.*, 372 F.3d at 167. As with any other matter arising after plan confirmation, the court must determine post-confirmation jurisdiction in light of *Craig's Stores* and *U.S. Brass,* and assess the strength of the nexus between the matter at hand and the confirmed plan.

---

**3.** *See generally* David R. Kuney, "Liquidation Trusts and the Quagmire of Postconfirmation Jurisdiction: the Case of the Disappearing Estate," 14 J. Bankr.L. & Prac. 6 (December 2005).

A comparison of the *Avado Brands* and the *Resorts International* cases illustrates how courts have delineated the boundaries of post-confirmation jurisdiction over liquidating trusts. In *Avado Brands*, the court concluded that it had post-confirmation jurisdiction over a liquidating trustee's claims against the debtor's former officers and directors. 358 B.R. at 873–875. The confirmed plan assigned the claims (which arose pre-petition) to the trust and authorized the trust to liquidate the claims and distribute the proceeds to the beneficiaries of the trust. *Id.* at 878–79. The trustee's proceeding involved state-law claims as well as "core" claims under federal bankruptcy law. Applying the factors outlined in *Encompass Services Corp.*, the court concluded that it had post-confirmation jurisdiction over the trustee's claims because of the strong nexus between the claims assigned to the trust and the implementation of the plan provisions providing for the liquidation of those claims. *Id.; see also In re AstroPower Liquidating Trust,* 335 B.R. 309 (Bankr.D.Del.2005) (post-confirmation jurisdiction over pre-petition claims assigned to the liquidating trust); *but see In re Insilco Technologies, Inc.,* 330 B.R. 512 (Bankr.D.Del.2005) (no post-confirmation jurisdiction over state law claims assigned to liquidating trust).

In contrast to *Avado Brands,* the proceeding brought by the trust in *Resorts International* did not involve claims assigned to the trust for liquidation, but involved claims that arose post-confirmation. As in *Avado Brands,* the confirmed plan in *Resorts International* provided for the creation of a litigation trust and assigned various pre-petition claims to the trust. 372 F.3d at 157–160. The trust prosecuted and ultimately settled these claims. Approximately six years after settling the claims, the trust commenced an adversary proceeding asserting state-law malpractice claims against the trust's former accounting firm. The claims were based upon the accounting firm's post-confirmation services to the trust.

The court first observed that "jurisdiction does not extend to all matters involving litigation trusts" and that post-confirmation jurisdiction over a liquidating or litigation trust turns on the strength of the nexus between the matter before the court and the confirmed plan. *Id.* at 169. The court found the requisite nexus lacking with respect to the trust's claims. Specifically, the court noted that the trust's claims were "ordinary" negligence and breach of contract claims arising under state law, and that the resolution of the claims would "have no substantial effect on the success of the plan." *Id.* Although the court conceded that the outcome of the adversary proceeding might affect the beneficiaries of the trust, the court concluded that the trust's litigation would only have an "incidental effect" on the reorganized debtor, and that the litigation would not interfere with the implementation of the plan. With respect to the trust's beneficiaries, the court explained that these beneficiaries "no longer have a close nexus to the bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims." *Id.* at 169.

The *Avado Brands* and *Resorts International* courts identify the key factors relevant to whether a bankruptcy court has post-confirmation "related to" jurisdiction over a litigation trust. Indeed, many of these factors mirror the factors identified by the *Encompass Services* court in applying *Craig's Stores* and *U.S. Brass.* First, the court should focus on the nature of the claims before the court. Claims based on federal bankruptcy law are more likely to have a stronger nexus to the bankruptcy plan and proceeding than purely state-law claims. *See Encompass Services,* 337 B.R. at 876. Courts also

consider whether the matter involves the liquidation of the debtor's pre-petition claims assigned to the trust by plan, as in *Avado Brands,* or whether the claims arose after confirmation, like the malpractice claims at issue in *Resorts International.* When the matter at hand involves the liquidation of pre-petition claims assigned to the trust by the plan, the nexus is usually sufficient to confer post-confirmation jurisdiction over the matter. *See, e.g., In re LGI, Inc.,* 322 B.R. 95, 103 (Bankr. D.N.J.2005) (concluding that post-confirmation jurisdiction existed over claims that arose pre-petition and that were assigned to the trust for liquidation).[4]

The court should also consider the stage of the bankruptcy case. One of the factors considered by the *Encompass Services* court was whether the plan has been substantially consummated. 337 B.R. 864 ("An action impacting a confirmed, but not substantially consummated plan would have an impact on the debtor-creditor relationship, a factor that favors continuing jurisdiction.") A dispute that arises after the plan has been substantially consummated is, by definition, less likely to have a significant impact on any remaining efforts to implement and consummate the plan. The same rationale also applies where, as in *Resorts International* and the present case, a matter comes to the court after the litigation trust has fully liquidated all of the claims assigned to the trust.

The scope of the trust's role in implementing the plan is another factor that courts consider in determining whether post-confirmation jurisdiction exists over a matter involving the trust. In *In re Fruehauf Trailer Corp.,* 369 B.R. 817 (Bankr. D.Del.2007), the court concluded that post-

confirmation jurisdiction existed based, in part, on the central and essential role of the trust in implementing the plan. 369 B.R. 817. According to the court, the trust "in this matter has a much broader scope [than the trust in *Resorts International*], having succeeded to all of the remaining assets and claims of the estate, the Trust undertook the tasks of liquidating the remaining assets, being the sole entity authorized to object to claims, effecting distributions pursuant to the Plan, and supervising the Plan consummation over a three to five year period." *Id.* at 817. The court noted that the trust in *Resorts International* "had a very narrow focus, namely, the liquidation of claims against a single person and related entities for the benefit of a limited class of creditors." *Id.*

Finally, the extent to which the matter involving the trust requires the interpretation of the plan or the orders of the bankruptcy court is an additional, although not dispositive, factor in determining whether the court has post-confirmation jurisdiction over the matter. Matters requiring extensive interpretation of the plan provisions governing the trust (or the court's orders pertaining to the trust's operations) are more likely to fall within the bankruptcy court's post-confirmation jurisdiction, especially in cases where the trust has not yet completed its primary role under the plan. On the other hand, courts have emphasized that post-confirmation jurisdiction over state-law claims (such as breach of contract claims) does not exist merely because prosecution of the claims that may incidentally require reference to the language of plan to determine the trust's contractual obligations. *See, e.g., Pelican*

---

4. According to the court:

Unlike the professional malpractice action in Resorts, the World Color action was not an accidental happenstance arising first in the operation of the Distribution Trust, but

was an important substantive element of the Plan to be prosecuted by the Distribution Trustee.

322 B.R. at 103.

*Refining Co., LLC v. Adams and Reese, LLP,* 2007 WL 1306808 at *2 n. 9 (S.D.Tex. May 3, 2007) (interpretation of the language of the exculpatory clause in a confirmed plan did not implicate federal bankruptcy law nor did it necessitate clarification only by a bankruptcy court); *see also Encompass Services,* 337 B.R. at 874 (same). In sum, as with the other relevant jurisdictional factors identified by courts, the focus must be on whether the claims require interpretation of the plan such that prosecution of the claims will impact the administration of the plan.

### c. Post-confirmation Jurisdiction Over Central's Claims

■■■ Turning to the present case, the court concludes that Central's claims against Goldin do not have the requisite nexus to the Plan to support post-confirmation jurisdiction. As counsel for both parties conceded during oral argument, the Plan has been substantially consummated. The Plan was confirmed over 10 years ago, and this court ruled that the Litigation Trust terminated in 2000—over 7 years ago. Although Goldin points out that the Litigation Trust has not yet made a final distribution to its beneficiaries, it is undisputed that the Trust has long since fulfilled its primary role under the plan to liquidate the causes of action assigned to it. The fact that Central's suit might affect the amount of the distribution to the beneficiaries of the Trust does not, alone, establish the requisite nexus.

Consideration of the nature of the claims also weighs against post-confirmation ju-

risdiction over this matter. Unlike *Avado Brands,* Central's claims against Goldin do not relate to the pre-petition claims that the Plan originally assigned to the trust, but instead flow from allegations regarding Goldin's post-confirmation conduct. Central's claims are also grounded in state law, not bankruptcy law. In its briefing, Goldin contends that Central's suit is a "core" proceeding because the suit will effect the administration of the Plan. The court disagrees. As explained above, Central's claims are grounded in Goldin's conduct following confirmation, and do not implicate the administration of the plan. Central's breach of contract and fiduciary duty claims may require reference to (or even the interpretation of) the Plan and the Trust Agreement, but this connection is too tenuous to support post-confirmation jurisdiction over Central's class action given that the Plan has been substantially consummated and the Trust's primary role in implementing the plan—the liquidation of the claims assigned to the Trust—has been completed.[5]

Finally, the limited role of the Litigation Trust under the Plan is an additional factor weighing against post-confirmation jurisdiction over Central's claims. The Litigation Trust did not have the broad role under the Plan that the trust had in the *Fruehauf Trailer* case. Instead, as in *Resorts International,* the role of the Litigation Trust was limited to prosecuting various claims assigned by the Plan.

■■■ In sum, the court concludes that it does not have post-confirmation jurisdiction over Central's claims against Goldin.[6]

---

5. Nothing in the parties' pleadings indicate that Central's claims collaterally attack any of this court's rulings regarding the implementation or consummation of the Plan, or that the claims will interfere with any remaining administration of the bankruptcy case.

6. Given the weight of factors against post-confirmation jurisdiction, the court's retention of jurisdiction in the confirmation order is not sufficient to support post-confirmation jurisdiction over this dispute. *In re Coho Energy, Inc.,* 309 B.R. 217 (Bankr.N.D.Tex. 2004) ("[S]ince federal courts are courts of limited jurisdiction ... the retention of jurisdiction provisions of the Plan cannot confer or expand the Court's subject matter jurisdiction.")

Accordingly, the *Barton* doctrine cannot bar Central from pursuing its claims in the forum of its choice.[7]

## CONCLUSION

For the foregoing reasons, the court grants Central's Motion Seeking Permission to Prosecute Civil Litigation Against Goldin Associates, LLC in the United States District Court for the Western District of Louisiana. A separate order in conformity with the foregoing reasons has this day been entered into the record of this proceeding.

**SO ORDERED.**

---

7. The court's conclusions regarding post-confirmation jurisdiction and the applicability of the *Barton* doctrine are limited to Central's class action against Goldin. Given that WRT's bankruptcy case is still open and that the Litigation Trust has not made a final distribution, other pending or future matters pertaining to the Trust or the Plan (and the parties' rights and obligations under the Plan or the Trust Agreement) may fall within the court's post-confirmation jurisdiction.