[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 19-11496 & 19-11603

_____

D.C. Docket No. 6:18-cv-00572-RBD-DCI

THOMAS SCOTT TUFTS, et al.,

Plaintiffs - Appellants - Cross-Appellees,

versus

EDWARD C. HAY, JR., et al.,

Defendants - Appellees - Cross-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(October 20, 2020)

Before MARTIN, ROSENBAUM, and TALLMAN,* Circuit Judges.

MARTIN, Circuit Judge:

Thomas Tufts and the Tufts Law Firm, PLLC appeal the District Court's

order granting a motion to dismiss this legal action on grounds of subject matter

---

* The Honorable Richard C. Tallman, Circuit Judge for the United States Court of
Appeals for the Ninth Circuit, sitting by designation.

jurisdiction.  Edward Hay and Pitts, Hay & Hugenschmidt, P.A. also filed a second motion to dismiss Tufts's action against them on the additional ground that the court lacked personal jurisdiction over them.  The District Court found that personal jurisdiction did exist, and Mr. Hay and his firm cross appeal that ruling here.  Upon careful consideration, and with the benefit of oral argument, we hold that the District Court correctly denied the motion to dismiss for lack of personal jurisdiction, but it erred in granting the motion to dismiss for lack of subject matter jurisdiction.  We therefore reverse the District Court's ruling on subject matter jurisdiction and remand this action.

## I.  BACKGROUND

This case arises out of a dispute between two sets of lawyers who provided legal work for their mutual client, Biltmore Investments, Ltd. ("Biltmore").  One set of counsel includes Mr. Hay, a North Carolina lawyer, and his North Carolina law firm, Pitts, Hay & Hugenschmidt, P.A. (collectively "Hay" or "Hay counsel").  Hay represented Biltmore in a Chapter 11 proceeding in the Bankruptcy Court for the Western District of North Carolina that commenced in January 2011.  The other set of counsel includes Mr. Tufts, a Florida lawyer, and his Florida law firm, Tufts Law Firm, PLLC (collectively "Tufts" or "Tufts counsel").  At the time Biltmore's bankruptcy petition was filed, Tufts represented Biltmore in various Florida cases involving a merger transaction.

2

During the bankruptcy proceeding, Hay "repeated[ly]" informed Tufts that there was a "bench order" approving Tufts's representation of Biltmore in all matters. Hay also continuously represented to the North Carolina Bankruptcy Court that Tufts was properly authorized to appear as "special counsel" for Biltmore. In reliance upon those representations, Tufts did extensive legal work for Biltmore. Among other things, Tufts transferred the Florida litigation to North Carolina; served as the disbursing agent for settlement funds in the Florida litigation; and appealed a "comfort order"[1] the Bankruptcy Court issued for one of Biltmore's creditors.

Unbeknownst to Tufts, there was no Bankruptcy Court "bench order" approving Tufts's representation of Biltmore. Hay's representations to the Bankruptcy Court that Tufts was authorized to appear as "special counsel" were also false. These facts ultimately came to light. Years later, at a March 18, 2015 hearing, Mr. Hay acknowledged to the Bankruptcy Court that Mr. Tufts relied on him for advice about how to proceed with the approval of attorney's fees, but that Hay failed to tell Tufts he needed to apply in advance for the fees.

---

[1] A bankruptcy court issues a comfort order to confirm that the automatic stay in bankruptcy does not apply to a specific piece of property. See 11 U.S.C. § 362(j). Once a comfort order is issued as to a creditor's collateral, for example, that creditor can proceed against the property that secures its debt without violating the bankruptcy stay.

3

This sequence of events led to a Bankruptcy Court order disgorging Tufts of all legal fees and costs paid to Tufts on account of the litigation over the comfort order. When Tufts counsel did not return the funds to Biltmore as ordered, the Bankruptcy Court held Tufts in civil contempt. As a result of the disgorgement and contempt orders, Tufts engaged in costly litigation and settlement negotiations in an effort to resolve these disputes. In December 2017, Biltmore's Chapter 11 proceeding was dismissed by way of consent order.

In April of the following year, Tufts sued Hay in U.S. District Court for, among other things, negligent misrepresentation, intentional misrepresentation, and indemnification. After Tufts counsel amended their complaint, Hay moved to dismiss the complaint for reasons that included lack of personal jurisdiction. The District Court denied the motion to dismiss, finding personal jurisdiction existed over Hay insofar as Tufts's allegations satisfied the requirements of Florida's long-arm statute and constitutional due process.

Having failed in its first effort to have the Tufts action dismissed, Hay filed a second motion to dismiss. This time Hay argued that the District Court lacked subject matter jurisdiction under the Barton doctrine. The Barton doctrine requires a plaintiff to "obtain leave of the bankruptcy court before initiating an action in district court when that action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity." Carter v. Rodgers,

220 F.3d 1249, 1252 (11th Cir. 2000). This time, the District Court granted Hay's motion to dismiss. In short, the court held that "Plaintiffs had to obtain leave from the Bankruptcy Court before suing," and their "failure to do so deprives this Court of subject matter jurisdiction."

This is Tufts's appeal of the dismissal of its suit against Hay based on the Barton doctrine. And this consolidated appeal also presents Hay counsel's cross-appeal of the order denying their motion to dismiss for lack of personal jurisdiction.

## II.  STANDARD OF REVIEW

We review de novo the legal conclusions upon which a district court dismisses a complaint for lack of subject matter jurisdiction. Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1328 (11th Cir. 2013). We employ de novo review, as well, in reviewing whether a district court has personal jurisdiction over a defendant. Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1217 (11th Cir. 2009).

## III.  DISCUSSION

We begin by addressing the interplay of the Barton doctrine and subject matter jurisdiction. We then consider whether the District Court properly exercised personal jurisdiction over Hay.

A.    THE DISTRICT COURT ERRED BY DISMISSING THE ACTION FOR LACK OF SUBJECT MATTER JURISDICTION UNDER THE BARTON DOCTRINE

In Barton v. Barbour, 104 U.S. 126 (1881), the Supreme Court recognized the "general rule that before suit is brought against a receiver leave of the court by which he was appointed must be obtained." Id. at 128.  The Supreme Court expressed the rule in terms of jurisdiction, saying: "[i]f the court below had entertained jurisdiction of this suit," it would have "been an usurpation of the powers and duties which belonged exclusively to another court." Id. at 136. Under what has become known as the Barton doctrine, a plaintiff "must obtain leave of the bankruptcy court before initiating an action in district court when that action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity." Carter, 220 F.3d at 1252.  Our Court has applied the Barton doctrine to require leave of court before an action can be initiated against lawyers that are "court-approved counsel" who function as the "equivalent of court-appointed officers." Lawrence v. Goldberg, 573 F.3d 1265, 1269–70 (11th Cir. 2009).

Here, Tufts counsel initiated their action against Hay—court-approved counsel—and Tufts did not obtain leave of the Bankruptcy Court before doing so. The Barton doctrine provides that "absent that leave, the district court correctly found that it did not have subject matter jurisdiction over [the] cause of action."

Carter, 220 F.3d at 1253.  Yet Tufts says the Barton doctrine cannot apply here, because it cannot properly extend beyond the jurisdiction of the Bankruptcy Court. Specifically, Tufts argues that because Biltmore's Chapter 11 bankruptcy case has now been dismissed, the Bankruptcy Court no longer has subject matter jurisdiction to consider the claims in this case.  Thus, Tufts counsel says they are relieved of any obligation to seek leave from that court to bring this action.

We are persuaded by the view advocated by Tufts counsel and hold that the Barton doctrine has no application when jurisdiction over a matter no longer exists in the bankruptcy court.  Our holding flows from Barton itself: when the bankruptcy court lacks jurisdiction, there are no "powers and duties which belong[]" to that court to be usurped by the district court "entertain[ing] jurisdiction of th[e] suit."  Barton, 104 U.S. at 136.  As one bankruptcy court has noted, decisions explaining the rationale for the Barton doctrine look to "the bankruptcy court's jurisdiction over the bankruptcy case and the powers that flow from that jurisdiction."  In re WRT Energy Corp., 402 B.R. 717, 722 (Bankr. W.D. La. 2007).  For example, courts have recognized that the Barton doctrine is based on "the bankruptcy court's exclusive in rem jurisdiction over the estate" and "the oversight and supervisory responsibilities of bankruptcy courts."  Id. (citing In re Crown Vantage, Inc., 421 F.3d 963, 971, 974 (9th Cir. 2005) and In re Lowenbraun, 453 F.3d 314, 321–22 (6th Cir. 2006)).  Similarly, this Court has

7

observed that a plaintiff's claims can "fall within the scope of the Barton doctrine

because they are 'related to' [the] bankruptcy proceeding," such that the

bankruptcy court has jurisdiction.  Lawrence, 573 F.3d at 1270–71.  As Tufts

argues, "a logical corollary to that holding" is that the Barton doctrine does not

apply once the bankruptcy court lacks jurisdiction.

As a rule, district courts have jurisdiction to refer to bankruptcy courts "all

cases under" the Bankruptcy Code and "all civil proceedings . . . arising in or

related to cases under" the Bankruptcy Code.  28 U.S.C. § 1334(a)–(b); see 28

U.S.C. § 157(a).  "[T]he test for determining whether a civil proceeding is related

to bankruptcy [under section 1334(b)] is whether the outcome of the proceeding

could conceivably have an effect on the estate being administered in bankruptcy."

In re Lemco Gypsum, Inc., 910 F.2d 784, 788 (11th Cir. 1990) (quotation marks

omitted).  Thus, under this Court's precedent, the Bankruptcy Court here was

properly vested with jurisdiction to consider this action if it could conceivably

have an effect on Biltmore's bankruptcy estate.

The question of whether this action "could conceivably have an effect on"

Biltmore's bankruptcy estate is an easy one here, because both parties have agreed

it cannot.  During a hearing on Hay's motion to dismiss for lack of subject matter

jurisdiction, counsel for Hay "concede[d] th[e] fact" that because "the Chapter 11

case has been dismissed," there is "no conceivable effect . . . that this case would

8

have on the estate." Hay confirmed this concession during oral argument before our Court. Thus, under the "conceivable effects" test for section 1334(b), the Bankruptcy Court did not have jurisdiction to consider Tufts's action, and Tufts counsel were not required to obtain leave from that court before filing this action in the District Court.[2] The Barton doctrine did not therefore deprive the District Court of subject matter jurisdiction over this case.[3] We expressly note that our holding here creates no categorical rule that the Barton doctrine can never apply once a bankruptcy case ends. We address this case only, and here these parties agreed this action could have no conceivable effect on the bankruptcy estate. On this record, the Bankruptcy Court lacked jurisdiction, and the Barton doctrine does not apply.[4]

---

[2] This case relates to the jurisdiction of the Bankruptcy Court for the Western District of North Carolina. The Fourth Circuit, which includes North Carolina, applies a "close nexus" test in evaluating "related to" jurisdiction in the context of a Chapter 11 plan, postconfirmation. See Valley Historic Ltd. P'ship v. Bank of N.Y., 486 F.3d 831, 837 (4th Cir. 2007). In light of Hay's concession, and because the Chapter 11 proceeding has been dismissed, our conclusion that the Bankruptcy Court lacked jurisdiction would be the same even if the "close nexus" test applied. See In re Resorts Int'l, Inc., 372 F.3d 154, 168–69 (3d Cir. 2004).

[3] In light of our holding that the Barton doctrine does not apply due to lack of jurisdiction vested in the Bankruptcy Court, we decline to address Tufts's remaining arguments for why the Barton doctrine does not apply.

[4] We are aware that some of our sister circuits apply the Barton doctrine after the bankruptcy case has ended. See Muratore v. Darr, 375 F.3d 140, 147 (1st Cir. 2004); In re Linton, 136 F.3d 544, 545 (7th Cir. 1998). Indeed, we read these cases to identify important policy reasons for applying the Barton doctrine in that context. For example, the Barton doctrine "enables bankruptcy judges to monitor the work of the trustees more effectively" and, absent the Barton doctrine, "trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees." Linton, 136 F.3d at 545. This Court has also recognized these concerns in other contexts. See Lawrence, 573 F.3d at 1269. We accept as

B.    THE DISTRICT COURT PROPERLY EXERCISED PERSONAL JURISDICTION OVER HAY

We turn now to Hay counsel's cross-appeal of the District Court's denial of their motion to dismiss for lack of personal jurisdiction.  As a preliminary matter, we must decide whether this Court has subject matter jurisdiction to decide this issue on appeal.  Although neither party considered this Court's subject matter jurisdiction in their briefing, "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking." Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999).

This Court has "jurisdiction of appeals from all final decisions of the district courts of the United States."  28 U.S.C. § 1291.  Upon the district court's entry of final judgment, this Court has jurisdiction to review its previous interlocutory orders—like the denial of Hay's motion to dismiss for lack of personal jurisdiction. See Aaro, Inc. v. Daewoo Int'l (Am.) Corp., 755 F.2d 1398, 1400 (11th Cir. 1985). However, in most cases, "the prevailing party does not have standing to appeal because it is assumed that the judgment has caused that party no injury." Agripost, Inc. v. Miami-Dade Cnty. ex rel. Manager, 195 F.3d 1225, 1230 (11th Cir. 1999). Nevertheless, we have jurisdiction to decide the personal jurisdiction issue here because "a prevailing party is entitled to defend [a district court's] judgment on

---

meritorious these policy reasons calling for application of the Barton doctrine, and our decision today does not conflict with the views of our sister circuits in this regard.

10

any ground preserved in the district court." Worthy v. City of Phenix City, 930

F.3d 1206, 1216 (11th Cir. 2019) (quotation marks omitted).  Since we have

jurisdiction over Tufts's appeal, our jurisdiction extends to allow our consideration

of Hay's argument that the District Court's judgment should be affirmed on other

grounds preserved in the District Court—namely, Hay's personal jurisdiction

defense.[5]

Having resolved the matter of our own jurisdiction, we next consider

whether the District Court properly exercised personal jurisdiction over Hay.  We

hold that it did.  A court has personal jurisdiction over a non-resident defendant if

(1) the state's long-arm statute provides jurisdiction, and (2) the exercise of such

jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.

PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 807, 811

(11th Cir. 2010).

Under Florida's long-arm statute, specific jurisdiction over a non-resident

defendant is proper when the defendant "[c]ommit[s] a tortious act within" Florida.

Fla. Stat. § 48.193(1)(a)(2).  Physical presence in Florida is not required.  Internet

Sols. Corp. v. Marshall, 39 So. 3d 1201, 1208 (Fla. 2010).  Instead, a tortious act

---

[5] True, Hay cross appealed on the personal jurisdiction issue, as opposed to simply raising this alternative ground for affirmance in response to Tufts's appeal.  Nevertheless, the two appeals were consolidated, and Hay raised the personal jurisdiction defense in response to Tufts's opening brief.  As a result, Hay has adequately raised personal jurisdiction as an alternative ground for affirmance.

"can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida," so long as the cause of action arises from such communications. Id. (quotation marks omitted). Tufts alleged that Hay counsel made "misrepresentations" when they "made repeated reference in [their] discussions with [Tufts] as to the purported issuance of a 'bench order' [they] claimed had been issued previously, approving of [Tufts's] representation of [Biltmore] in all matters." The complaint goes on to allege that "[a]t all times pertinent to this action" Mr. Tufts was a resident of Florida and the Tufts Law Firm was operating in Florida. We therefore draw the reasonable inference that when Hay counsel made such misrepresentations to Tufts, those misrepresentations were made in Florida. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010) ("We . . . draw all reasonable inferences in the plaintiff's favor."). Hay counsel acknowledges that they "may have communicated with Tufts when Tufts was in Florida." For this reason as well, we infer that those repeated misrepresentations were made into Florida. See Internet Sols., 39 So. 3d at 1208. And Hay's misrepresentations also give rise to Tufts's causes of action, which satisfies the requirements of Florida's long-arm statute. See id. at 1208–09. Specifically, Tufts counsel alleges they performed work for Biltmore in reliance on Hay's misrepresentations. So it was as a result of these misrepresentations that Tufts did work they were not authorized to do. This, in turn, led to the disgorgement and

contempt orders as well as Tufts's time and expense in working to resolve those disputes.

Because Tufts's allegations satisfy the requirements of Florida's long-arm statute, we next consider whether the exercise of personal jurisdiction comports with constitutional due process. See PVC Windoors, 598 F.3d at 811. A court's exercise of specific personal jurisdiction comports with due process when (1) the non-resident defendant "purposefully availed himself" of the privilege of conducting activities within the forum state, (2) the plaintiff's claims "arise out of or relate to" one of the defendant's contacts within the forum state, and (3) the exercise of personal jurisdiction is in accordance with "traditional notions of fair play and substantial justice." Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013) (quotation marks omitted).

Hay counsel purposefully availed themselves of Florida by having minimum contacts in Florida.[6] See id. at 1357. Hay counsel's repeated misrepresentations regarding the non-existent "bench order" were made to Tufts in Florida. This

---

[6] Hay counsel contends that the District Court erred in its analysis of the purposeful availment prong because it only applied the "effects test." Hay argues that under Louis Vuitton, the District Court should have applied both the traditional minimum contacts test and the effects test. This argument fails because our precedent does not require the application of both tests. Louis Vuitton held that in "intentional tort cases, there are two applicable tests for determining whether purposeful availment occurred": the traditional minimum contacts test and the effects test. Louis Vuitton, 736 F.3d at 1356–57. Because both tests address the same question— whether the defendant purposefully availed itself of the forum state—only one test need be applied. See id. at 1357. Since Hay had minimum contacts in Florida, we do not apply the effects test.

13

"purposeful conduct created a substantial connection with the forum state" and supports jurisdiction. Licciardello v. Lovelady, 544 F.3d 1280, 1285 (11th Cir. 2008) (quotation marks omitted).

As for the second requirement of due process, Tufts counsel's causes of action arise out of Hay's contacts in Florida. See Louis Vuitton, 736 F.3d at 1355. Hay correctly argues that our precedent requires that its contacts be the but-for cause of Tufts' claims. See Oldfield, 558 F.3d at 1222–23. We agree, and here Hay counsel's misrepresentations in Florida are the but-for cause of Tufts's claims. But for the misrepresentations made by Hay counsel, Tufts would not have performed work for Biltmore they were unauthorized to perform. This in turn led to the disgorgement and contempt orders and Tufts's efforts to resolve those disputes.

As to the third requirement of due process, it is met because the exercise of jurisdiction would comport with fair play and substantial justice. See Lovelady, 544 F.3d at 1288. We consider "[r]elevant factors includ[ing] the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." Id. Hay counsel concede that Tufts counsel have an interest in convenience. While we acknowledge that litigating in Florida places some burden on Hay counsel, the interest of the forum state and the judicial

14

system's interest in resolving the dispute overcome any concerns about Hay's burden. "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." Id.

## IV.  CONCLUSION

Because the District Court erred in granting Hay's motion to dismiss for lack of subject matter jurisdiction, we **REVERSE** that ruling. As to Hay counsel's request that we affirm on the alternative ground that the District Court lacked personal jurisdiction over them, their argument fails. The District Court correctly denied Hay's motion to dismiss for lack of personal jurisdiction. We **REMAND** for further proceedings consistent with this opinion.