[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10649

Non-Argument Calendar

_____

JEFFERY WOODEN,

Plaintiff-Appellant,

*versus*

THE TOWN OF EATONVILLE,
ROY SMITH,
Individually,
ROBERT L. JONES,
Individually,
ANTHONY GRANT,
in his official capacity as mayor of Eatonville, Florida,
JOSEPH JENKINS,
individually and in his official capacity as deputy chief
of the Eatonville police department,

2                    Opinion of the Court                    22-10649

TOWN OF EATONVILLE,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:19-cv-02382-CEM-EJK

————————————

Before ROSENBAUM, JILL PRYOR, and LAGOA, Circuit Judges.

PER CURIAM:

Jeffery Wooden, proceeding *pro se*, filed an action for false arrest and false imprisonment under 42 U.S.C. § 1983 and state tort claims for false imprisonment and malicious prosecution under Florida law against the town of Eatonville, Roy Smith, Robert Jones, Anthony Grant, and Joseph Jenkins (collectively, "Defendants"). Wooden now appeals the district court's order granting in part the Defendants' partial motions to dismiss several of his claims and its order granting summary judgment to the Defendants on the remaining claims in his complaint.

On appeal, Wooden first argues that the district court erred in granting summary judgment in favor of the Defendants because there was no probable cause for any of his arrests. Second, he argues that the district court erred in granting the Defendants'

motion to dismiss his state law false imprisonment claims against Officers Roy Smith and Jones on the ground that they were entitled to immunity under state law.  For the following reasons, we affirm.

## I.     BACKGROUND

In March 2021, Wooden filed the operative complaint against Defendants and asserted eleven claims.  In Counts I to III, he alleged that Jenkins, Jones, and Roy Smith falsely arrested and imprisoned him without probable cause and in violation of the Fourth Amendment.  In Counts IV and V, he brought claims under *Monell*[1] against Jenkins and Grant in their official capacities, contending that they participated in a longstanding practice causing the deprivation of his rights under the Fourth Amendment for his false imprisonment and arrest.  In Counts VI to VII, Wooden alleged state tort claims for false imprisonment against Jones, Roy Smith, and the Town of Eatonville.  In Counts IX and X, he alleged malicious prosecution claims against Jones and Jenkins.  And, in Count XI, he alleged a defamation claim against Jenkins.

### A. Allegations in the Complaint

---

[1] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691–94 (1978) (holding that, although a § 1983 plaintiff cannot rely on the doctrine of *respondeat superior* to hold a municipality liable for its employees' actions, a municipality can be liable for such actions under § 1983 if its "policy or custom" caused the deprivation of the plaintiff's federal right).

In the operative complaint, Wooden alleged the following. Wooden's mother, Debbie Smith,[2] owned a hotel in Eatonville known as the Eatonville Home Town Suites. In 2002, Wooden's mother sold a partial ownership interest in the hotel to the Eatonville mayor, Anthony Grant. Wooden's mother later passed away, and Wooden was named the personal representative of his mother's estate, in which his mother's ownership interest was an estate asset. After being appointed personal representative, Wooden and Grant had a business relationship, which deteriorated after Wooden noticed that Grant was mismanaging the hotel. After the relationship deteriorated, Grant misused his power as mayor to have Wooden arrested for trespassing on the property to prevent the latter from entering the hotel to inspect the books and records. Wooden later obtained an order from the Orange County Probate Court granting him access to the hotel property to monitor or review, in an orderly fashion, the hotel records on weekdays from 9:00 a.m. to 1:00 p.m.

Wooden further alleged that, on December 17, 2015, he went to the hotel and found it locked, so he hired a locksmith so that he could access the property. Shortly after, Grant arrived and demanded that Wooden leave the premises. Soon after, two officers from the Eatonville Police Department arrived at the hotel to respond to Grant's call about a "burglary in process." Wooden explained that he was the partial owner of the hotel and showed the

---

[2] Because one of the defendants also has the last name of Smith, for the rest of the opinion, we refer to each Smith by their full names.

officers a copy of the order allowing him access to the property. The officers told Grant that the dispute was a civil matter that should be resolved through the courts. While the officers were leaving, Jenkins arrived and was hostile to Wooden, stating that he needed to leave the hotel because "the mayor said so." Wooden informed Jenkins that he was partial owner of the hotel and had legal authority to be there, and he refused to leave the property. Jenkins stated that he would talk to the state attorney's office to determine if Wooden was illegally on the property because Grant did not want him on the property and stated that he was the mayor.

Wooden further stated that on December 18, 2015, he returned to the hotel, and, shortly after, Grant arrived with Jenkins and Officer Jones. Jones then arrested Wooden for trespassing, and Wooden was transported to jail. However, the case was dismissed because it was deemed "unsuitable for prosecution." On January 16, 2016, Wooden was standing on the hotel property to watch a Martin Luther King, Jr., Day parade, and Jones approached him. Grant had called Jenkins, who ordered Jones to go to the hotel to "handle the situation." Jones told Wooden that he knew he should not be there, and Wooden told Jones that he had legal authority to be on the premises and showed him the notice showing that the charges against him arising out of the December 18 arrest had been dismissed because the case was deemed unsuitable for prosecution. Jones arrested Wooden and took him to jail. However, there were no court records that showed that Wooden ever had an open case for that arrest.

Wooden further alleged that from February 2016 to about October 2016, the probate court banned both Grant and Wooden from the property and established a curatorship, which was later dissolved. Wooden was reappointed as personal representative of his mother's estate and co-owner of the hotel property. On November 16, 2016, Wooden went to the property and was approached by Grant and Gary Lowry, a hotel employee, who called Officer Roy Smith to come to the hotel. Roy Smith began to verbally abuse and curse Wooden, slamming handcuffs tightly on his wrists and telling him not to resist, although he was not resisting. Roy Smith put Wooden in the police car before turning around and releasing Wooden, telling him that "he'd better not return" to the property. On November 15, 2016, Wooden again entered the hotel to "trespass a vagrant" on the property after noticing a high level of crime on the property. Due to this high level of crime, he set up a make-shift security office in room number 127. On November 18, 2016, Jenkins obtained an arrest warrant to arrest Wooden for attempted burglary of room 127. After finding out about the arrest warrant on January 17, 2017, Wooden turned himself in to the police and was placed in jail. However, the case was dismissed and deemed unsuitable for prosecution.

### B. The Motions for Partial Dismissal

Jenkins, Jones, and Roy Smith answered, denied liability, and asserted certain defenses. Jenkins then filed a partial motion to dismiss claims brought against him in his official capacity, arguing that either he or the municipality should be sued, but not both. Roy Smith, Jenkins, and Jones also filed a partial motion to dismiss

Counts VI and VII, arguing that the complaint failed to state a claim for relief against them in their individual capacities because Wooden did not allege that they acted in bad faith or with a malicious purpose. They also argued that Count XII should be dismissed because Jenkins had an absolute privilege regarding any statement he made incidental to his official duties, shielding him from a defamation claim arising from actions taken within the scope of his employment.

### C. The Motions for Summary Judgment

Following discovery, Jenkins, Jones, and Roy Smith, in their individual capacities, filed motions for summary judgment on Wooden's claims. In support of their motions, they filed certain evidentiary materials, including a transcript of Wooden's deposition, the shareholder's agreement between Grant and Wooden's mother, documents showing that Wooden was the personal representative of his mother's estate, information regarding the guardianship of Wooden's mother, judges' access orders allowing Wooden to inspect the hotel, a judge's order revoking two orders, and affidavits from Jones and Roy Smith. Further, in support of his motion for summary judgment in his official capacity, Jenkins filed additional documents, including various arrest warrants, trespass warnings, and offense reports for Wooden.

Wooden stated the following in his deposition. On December 17, 2015, he was present at the hotel exercising his rights as personal representative of his mother's estate to see how business was going. He became personal representative of his mother's estate

in 2010 based on a decision of his siblings. His sister, Monique Washington, had a guardianship over his mother and was originally the personal representative after her mother died without a will. Later, the siblings agreed to make Wooden the personal representative. His family built the hotel in 1960 and owned it for forty years. Wooden's mother needed help maintaining the hotel, so she partnered with Grant and created a corporation, Eatonville Holdings, Inc., where Wooden's mother owned forty percent equity of the company and Grant owned sixty percent. Wooden's mother and Grant participated in a lawsuit over mismanagement of funds. According to Wooden, this lawsuit was resolved on the basis that "everything just went back to the shareholders agreement," and neither party was required to pay the other a monetary payment. As to the hotel, Wooden's responsibilities included maintaining the books and records. He also helped maintain the hotel. He had a court order from 2012 that said that he was not trespassing when he was present at the hotel and had a right to inspect documents. However, from December 2015 through November 2016, he did not have access to the financial information of the hotel.

Wooden further stated that on December 17, 2015, he went to the property to review records. Debbie Jefferson or Garry Lowry, who both worked at the hotel, contacted Grant, who came to the hotel with Jenkins. Grant said that Wooden was trespassing and that he wanted him off the property, but Jenkins said that he did not know if he could do that and would check with a local state attorney. The next day, Jenkins said he spoke to the attorney who

told him that this was a civil matter. Jenkins said he was shown documentation regarding Wooden's rights to the property and asked him to file a complaint with the police department, which Wooden did, and then he returned to the hotel office. However, Grant again returned with Jenkins and Jones, and Jenkins said that Wooden needed to leave because he was trespassing. Wooden resisted and said he would not leave, and Jones arrested him and took him to jail for trespassing. Jenkins never personally arrested Wooden, but he was close by during the arrest on December 18, 2015, when Jenkins ordered Jones to arrest him. Wooden claimed that the Eatonville Police violated his civil and constitutional rights, but there were no specific policies or procedures he could name. Wooden talked to the state attorney, who said she could not believe he went to jail and said that this charge was unsuitable for prosecution. The charges were eventually dropped, and he was never adjudicated guilty of any offense for the events of that day.

Wooden further stated that on January 16, 2016, he returned to the property because he believed the trespassing order was not in effect, as he was not prosecuted for the previous alleged trespass. He was present on the property to watch the Martin Luther King, Jr., parade with his family. He entered the hotel office as he was waiting for the parade to pass, and Jones approached him and asked what he was doing there. Wooden stated that he was waiting for the parade, and Jones told him he was not supposed to be there. Wooden showed him the paperwork that his previous trespass was deemed unsuitable for prosecution, and Jones said that he did not care and was taking Wooden to jail, which he did. Jenkins was not

present the day of the arrest.  Wooden was later released and not criminally charged.

Wooden also stated that a curator took over the property from around February or March to October 2016, and he was not allowed on the property until the curatorship ended.  After that, the ownership went back to the shareholder agreement, where Wooden was again personal representative of his mother's estate. There were no arrests between January 16, 2016, to November 2016.  However, on November 13, 2016, Wooden went to room 127 of the hotel for security purposes because of a high rate of crime and drug use on the property.  In the meantime, Grant, Jenkins, and Roy Smith persuaded a judge to issue a warrant for Wooden's arrest, saying that he burglarized the room, which was occupied.  This was false information, Wooden asserted, because he did not burglarize the occupant's room.  According to Wooden, the room was vacant and destroyed and not occupied.  He had to have the occupant removed from the apartment for using drugs on the property.  Later, in December 2016, Wooden discovered the warrant for his arrest and turned himself in in January 2017.

Wooden further stated that as to the November 16, 2016, incident, the police report from that day said that he threatened to kill or injure Grant.  As the officer was taking Wooden to jail, the officer turned around, told him not to go back to the hotel, and released him. Jenkins was not present at this arrest.  The reason he was released was because Jenkins said that a witness's statement that the police used in support of the arrest was not true.  He again

was not prosecuted for the offense.  As to his malicious prosecution claim, Wooden conceded that he was not prosecuted as a result of any of the arrests.

A police report for the November 13, 2016, arrest stated that an officer obtained a copy of a judge's order, which stated that "[t]he curator shall immediately give all the assets of the corporation Eatonville Holdings, Inc., back to the majority shareholder, Anthony Grant."  The order also stated that "assets of a corporation cannot be taken into an estate as assets of the estate."  The report stated that Wooden disputed the information.

The attached shareholder agreement stated that Debbie Smith and Anthony Grant entered into a business agreement forming Eatonville Holdings, Inc., where Debbie Smith had a forty percent stock ownership in the motel and Grant had a sixty percent stock ownership.  The first access order from the Orange County, Florida, state court said that the personal representative of Debbie Smith's property had the right to access the hotel on July 9, 2010, to inspect the property's financial records.  On August 6, 2012, a third access order granted Wooden authority to go to the hotel "in an orderly fashion" to "monitor or review any records or receipts of revenue for the said property from Monday through Friday from 9 a.m. to 1 p.m. without pay."  An order on May 28, 2014, revoked the first access order and a second access order not in the record. The order stated that Wooden was directed to "file the necessary forms and documents to close th[e] Estate within 90 days from the date of th[e] Order."

Jones stated the following in an affidavit.  Jones arrived at the hotel on December 18, 2015, where he saw Wooden, Grant, and Jenkins, and Wooden was causing a disturbance.  He knew from personal knowledge that Grant was the owner and operator of the hotel, and Grant signed a trespass warning directed at Wooden, which had an expiration date of December 18, 2016. Jones personally served Wooden with the trespass warning in front of Grant and Jenkins and repeatedly ordered Wooden to leave the premises, but he refused.  Jones thus arrested Wooden for trespassing under Florida Statute § 810.08.  On January 16, 2016, Jones again arrested Wooden for trespassing at the hotel pursuant to the trespass warning issued on December 18, 2015.  The affidavit included a copy of the arrest affidavit from January 16, 2016, from Jones, which stated that Wooden falsely gained entry to the office with a locksmith after showing the locksmith some papers and asking him to open the front door.  Jones further stated that the person who called the police felt that Wooden was disrupting the business with his presence.

Roy Smith also stated the following in an affidavit.  On November 16, 2016, he responded to a call at the hotel relating to a disturbance, where he met with Grant, who he knew as the owner and operator of the hotel.  Roy Smith was aware of the previous trespass warning that had an expiration date of December 18, 2016. Grant told Roy Smith that Wooden had approached him and the hotel manager, Gary Lowry, at the back of the hotel, where Wooden stated three times, "I'm gonna kill you and lay your bitch ass down."  Lowry confirmed these statements.  Based on these

sworn statements from Grant and Lowry, Roy Smith took Wooden into custody on charges of intimidation—threat to kill or injure, in violation of Florida Statute § 836.10. On November 13, 2016, he also approached the hotel and was advised that Wooden gained access to room 127, occupied by a tenant named Timothy Davis, by using a crowbar, and that Wooden removed Davis's possessions and placed them on the sidewalk. Davis provided a sworn statement, stating he wished to prosecute Wooden for burglarizing his hotel room. Roy Smith also obtained a sworn statement from the front desk clerk, Jefferson, who confirmed the incident. Following the incident, Roy Smith completed an affidavit for arrest, and a state court judge signed an arrest warrant.

Jenkins also stated the following in an affidavit. He was the Chief of Police for the Eatonville Police Department during all incidents in Wooden's complaint. He was present on December 18, 2015, when Wooden was causing a disturbance at the hotel and Grant signed a trespass warning directed at Wooden. Despite the fact that Jones served him with the warrant and directed him to leave, Wooden refused and was arrested in Jenkins's presence. Jenkins was not present for any of the other arrests, but in Jenkins's view, there was probable cause for the arrests based on the trespass warning or sworn witness statements.

Wooden filed responses opposing all of the motions for summary judgment.

### D. The District Court's Rulings

A magistrate judge prepared a report and recommendation ("R&R"), first recommending denying Jenkins's motion to dismiss and construing Counts Four and Five against Jenkins as claims against Eatonville.  Second, as to Wooden's state law false imprisonment claims against Jones and Roy Smith, the magistrate judge stated that Wooden had failed to allege facts showing that Jones and Roy Smith acted maliciously or in bad faith and thus recommended dismissal of those claims based on sovereign immunity. Third, the magistrate judge recommended dismissing Wooden's defamation claim because Jenkins was covered by absolute privilege for statements made related to his official duties and Wooden had failed to allege that Jenkins acted outside these duties by preparing a warrant.  The magistrate judge also provided a notice to the parties that they had fourteen days after service of the R&R to object and that a "party's failure to file written objections waive[d] that party's right to challenge on appeal any unobjected-to factual findings or legal conclusion the district court adopt[ed] from the [R&R]."

Then, the district court issued an order addressing the pending motions to dismiss and motions for summary judgment.  First, noting that no objections had been filed to the R&R, the district court adopted the magistrate judge's recommendation with the exception that it disagreed with the magistrate judge that Wooden had dropped Eatonville from the suit because Wooden clearly listed the town in the "Parties" section of his amended complaint.

The district court then addressed the Defendants' motions for summary judgment and analyzed whether there was probable cause for Wooden's four arrests, which would bar all his remaining claims under § 1983 and for state law false imprisonment and malicious prosecution. The court first noted that it was undisputed that Grant was an owner of the property and that the only evidence provided by Wooden as the basis for his right to legally be on the property was his authority as personal representative of his mother's estate pursuant to the Letters of Administration, the Shareholder agreement, and the access orders in the probate case.

As for the December 17, 2015, incident, the district court noted that Wooden was not arrested or prosecuted as a result, and therefore there was no basis for claims of false imprisonment or malicious prosecution based on this incident. Even if there were, the district court explained, the claims would fail because there was probable cause to arrest him. It determined that Wooden only had authorization from the letters of administration, shareholder agreement, and access orders to go on the property "in an orderly fashion," which Wooden did not do when he hired a locksmith to break into the property and disrupt the business's operation. The court thus determined that there was probable cause to believe that Wooden had exceeded his authority to be on the property, which, together with the property owner's request that Wooden leave, was sufficient probable cause to arrest Wooden for trespass.

As to Wooden's December 18 arrest for again using a locksmith to gain access to the office on the property, the district court

determined there was information sufficient to find probable cause. The district court reached this conclusion because Wooden's access to the property exceeded his authority, and Jones and Jenkins had reason to believe the access order was no longer valid given that the incident occurred well beyond the ninety-day deadline that had been set to close the probate case. Further, the district court rejected Wooden's argument that probable cause did not exist because this was a civil matter. As the district court explained, even if that were true, the officer's decision to arrest someone was different from the prosecutor's decision to prosecute or not, and it did not affect whether probable cause existed for the arrest in the first place.

For the January 16, 2016, arrest, the district court determined that Jones knew that Wooden had been issued a trespass warning that was still in effect and that the probate court had entered an order reasonably read to have revoked Wooden's access to the property, which was enough to create probable cause to arrest Wooden for trespass. Further, the district court determined that even if Jones believed the third access order was still in effect, Wooden's presence on the property was beyond what was allowed in that order, as he only had authority to review any records or receipts of revenue, which did not give him authority to enjoy the Marin Luther King, Jr., Day parade with his family like he admitted to doing. Lastly, the district court said that the state attorney's decision not to prosecute Wooden for the December 2015 incident did not render the trespass warning ineffectual or impact whether there was probable cause for his arrest.

As for the November 13, 2016, arrest, the district court held that breaking into a room in the hotel and installing a security office was clearly beyond the authority Wooden had based on the probate order and gave grounds for probable cause for trespass and burglary. While the court noted that Wooden maintained that the room was vacant, it stated that two witnesses had provided Roy Smith with statements establishing that the room had been rented to Davis and Davis's property had been removed from the room.

As for the November 16, 2016, arrest, the district court held that there was probable cause that Wooden threatened to injure Grant based on the sworn statements of two witnesses and the history between the parties, which Roy Smith was aware of. The district court held that even if there were not probable cause to arrest Wooden for threatening to kill Grant, there was probable cause to arrest him for trespass based on the previous trespass notice that was still in effect and a probate order that plainly stated that all assets and management of the property belonged to Grant.

Thus, the district court held that, because there was probable cause to arrest Wooden in each instance, the Defendants were entitled to summary judgment on all remaining claims. This appeal ensued.

## II.

We review *de novo* a district court's grant of summary judgment, "viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." *Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020) (quoting *Guevara v. NCL*

*(Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019)). Summary judgment is appropriate when the record evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "But it is improper if a reasonable jury could find for the non-moving party." *Amy*, 961 F.3d at 1308. In addition, documents filed by *pro se* litigants are to be liberally construed and must be held to less stringent standards than documents drafted by attorneys. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

"A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). A warrantless arrest lacking probable cause violates the Constitution and can underpin a § 1983 claim, "but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Id*. In deciding whether probable cause exists, police officers need not resolve every inconsistency found in the evidence, as long as it is reasonable to conclude from the totality of the circumstances that a crime was committed. *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019). Some conflicting evidence or a possible affirmative defense does not

"necessarily vitiate probable cause." *Id*. "That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself." *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990). The standard for determining probable cause is the same under Florida and federal law. *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir. 1998).

Probable cause is an absolute bar to state law and § 1983 claims alleging false arrest. *Id*. at 1435. "The existence of probable cause constitutes an affirmative defense to the claims of false arrest and imprisonment under Florida law." *Id*. at 1436. The existence of probable cause will also defeat a claim for malicious prosecution under Florida law. *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1309 (11th Cir. 2019).

> Florida law defines "trespass" as
>
> Whoever, without being authorized, licensed, or invited, willfully enters or remains in any structure or conveyance, or, having been authorized, licensed, or invited, is warned by the owner or lessee of the premises, or by a person authorized by the owner or lessee, to depart and refuses to do so, commits the offense of trespass in a structure or conveyance.

Fla. Stat. § 810.08(1). Florida law defines "burglary" as "[e]ntering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter." *Id*. § 810.02(1)(b). As relevant here, Florida law defines the crime of

threats, in relevant part, as "[w]hoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another." *Id*. § 836.05.

Here, the district court did not err in granting the Defendants' motions for summary judgment because there was probable cause for each of Wooden's arrests, which was fatal to each of his claims. First, the fact that criminal charges were dropped or not brought against Wooden for the arrests has no bearing on the probable cause analysis. *Marx*, 905 F.3d at 1507. Next, although the administration of Wooden's mother's estate was a civil matter generally, Wooden could not engage in alleged criminal activity of trespassing, burglary, and threats related to his mother's estate.

Further, the district court also properly rejected Wooden's argument that there was not probable cause to arrest him because he was authorized by the probate court to enter the property as the personal representative of his mother's estate. Even assuming the access order was still valid at the relevant times that Wooden was arrested, Wooden could only enter the property "in an orderly fashion" to review the books and records. But, reviewing each of the four incidents, there was probable cause for each arrest.

Accordingly, the district court did not err in granting summary judgment as to all claims of false imprisonment, false arrest, and malicious prosecution, and we affirm as to this issue.

**II.**

We review *de novo* a district court's ruling on a motion to dismiss. *Chua v. Ekonomou*, 1 F.4th 948, 952 (11th Cir. 2021). We will accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Id*.

Florida's sovereign immunity statute grants immunity to police officers unless they "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). "An officer acts maliciously when he acts with 'the subjective intent to do wrong.'" *Baxter v. Roberts*, 54 F.4th 1241, 1271 (11th Cir. 2022) (quoting *Peterson v. Pollack*, 290 So. 3d 102, 109 (Fla. Dist. Ct. App. 2020)). Additionally, we have held that a plaintiff's intentional infliction of emotional distress and malicious prosecution claims were barred by Florida's sovereign immunity statute. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1330 (11th Cir. 2015).

Under 11th Circuit Rule 3-1, "a party who fails to object to a magistrate judge's report and recommendation 'waives the right to challenge on appeal the district court's order based on unobjected-to-factual and legal conclusions'" so long as "the party who failed to object 'was informed of the time period for objecting and the consequences for failing to do so.'" *Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020) (quoting 11th Cir. R. 3-1). "[H]owever, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. We will find plain error only when (1)

an error has occurred, (2) the error was plain, (3) the error affected the defendant's substantial rights, and (4) the error seriously affected the fairness of the judicial proceedings. *Dupree v. Warden*, 715 F.3d 1295, 1301 (11th Cir. 2013). An error is plain if the explicit language of a statute or rule or precedent from the Supreme Court or us directly resolves the issue. *United States v. Innocent*, 977 F.3d 1077, 1081 (11th Cir. 2020).

Finally, we have "long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014); *see also United States v. Campbell*, 26 F.4th 860, 873 (11th Cir.) (en banc) (holding in the criminal context that issues not raised in an initial brief are deemed forfeited and will not be addressed absent extraordinary circumstances), *cert. denied*, 143 S. Ct. 95 (2022).

Here, as an initial matter, Wooden did not argue on appeal that the district court erred in dismissing his defamation claim against Jenkins. As a result, he forfeited any challenge to the dismissal of this claim. *Sapuppo*, 739 F.3d at 681. Further, Wooden did not file any objections to the R&R recommending partial dismissal, so he is, at most, entitled only to plain error review. And Wooden has not shown that the district court plainly erred in granting the partial motions to dismiss because the officers were shielded by sovereign immunity. Accordingly, we also affirm as to this issue.

★ ★ ★ ★

22-10649                 Opinion of the Court                    23

For the foregoing reasons, we affirm the district court's orders.

**AFFIRMED.**